CARTER *v.* LOWRY, sheriff.

No. 7076. DECEMBER 11, 1929.

*Reuben A. Garland,* for plaintiff.
*John A. Boykin, solicitor-general,* and *John S. McClelland, solicitor,* contra.

Hill, J. This is a habeas-corpus case, brought by W. F. Carter, who alleged as follows: He is illegally held and restrained of his liberty, by being confined in the Fulton County jail by James I. Lowry, sheriff of said county. He was tried and convicted on February 13, 1927, in the criminal court of Atlanta, on an accusation that he "did utter and deliver said check to the Sinclair Sales Co., a corporation, knowing at the time he did so that accused did not have sufficient funds in the said the Fulton National Bank, or credit with the said bank, for the payment of the said check upon its presentation: all of which was done with intent to defraud the said the Fulton National Bank and the Sinclair Sales Co." The accusation was based upon a law known as the bad-check law passed by the legislature (Ga. L. 1924, p. 194), which declares: "That any person who, with intent to defraud, shall make, or draw, or utter, or deliver any check, draft, or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in or credit with such bank, or other depository, for the payment of such check, draft, or order upon its presentation, shall be guilty of a misdemeanor. The making, drawing, uttering, or delivering of such check, draft, or order as aforesaid shall be prima facie evidence of intent to defraud. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository for the payment of such check, draft, or order." This act is alleged to be unconstitutional and void as in conflict with the provisions of par. 3 of sec. 1 of art. 1 of the constitution of the State, that "No person shall be deprived of life, liberty, or property, except by due process of law." Also, the act is in conflict with par. 1 of sec. 2 of art. 1 of the constitution, which provides: "In all prosecutions or indictments for libel, the truth may be given in evidence; and the jury in all criminal cases shall be the judges of the law and the facts. The power of the judges to grant new trials in case of conviction is preserved." It is alleged that the act deprives the jury of the right to judge the law and the facts, and is unreasonable and arbitrary in that it takes away the right of the jury to determine the guilt or innocence of the accused, the act being tantamount in effect to commanding the jury to convict in the event the check is not paid upon presentation at the bank; that the presumption created by the act is so un-

reasonable and arbitrary as to amount to a denial of due process of law, in violation of the fourteenth amendment of the constitution of the United States, which declares that "No person shall be deprived of life, liberty, or property without due process of law." Further, that the presumption of law raised by the act is unreasonable, and is made conclusive as to the rights of the person against whom it is raised, and constitutes a denial of due process of law; that it creates a presumption that is arbitrary; that it operates solely for the purpose of denying plaintiff a fair opportunity to repel a violation of said law; that the act does not specify the element of offense, and that the facts alleged in said law and in said accusation are uncertain and vague, such as the term "intent to defraud," etc.

An act similar to the act of 1924 was construed by this court in *Berry* v. *State,* 153 *Ga.* 169, 171 (111 S. E. 669, 35 A. L. R. 370). In delivering the opinion Mr. Justice Hines said: "It is urged by counsel for the defendant that section 34 of the act of August 16, 1919 (Ga. L. 1919, pp. 135, 220), is in conflict with art. 3, sec. 7, par. 17, of the constitution of this State, . . because this act amends or repeals the act of August 14, 1914 (Ga. L. 1914, p. 86), which makes it 'a misdemeanor to draw and utter any check, draft, or order, when the drawer has not at the time sufficient funds to meet the same, provided such drawer does not deposit with the drawee sufficient funds to meet the same within thirty days.' . . Upon proof of the above facts the presumption arises that the making, uttering, drawing, or delivering of either of such instruments was done with intent to defraud. The burden would then be upon the defendant to establish that such instrument was not made, drawn, uttered, or delivered with intent to defraud. This presumption is a rebuttable one. The defendant would be relieved of this burden if it should appear from the evidence introduced by the State that he was not actuated by an intent to defraud in making, drawing, uttering, or delivering any one of such instruments. The presumption in this case is similar to the presumption of malice in homicide cases, in which it has been held that the presumption may be negatived by the proof submitted by the State. *Futch* v. *State,* 90 *Ga.* 472 (16 S. E. 102); *Green* v. *State,* 124 *Ga.* 343 (52 S. E. 431); *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934)." It will be observed that the language of the act of

1919 is practically identical with the language of the act of 1924. The presumption mentioned in the act of 1924 is not conclusive, but it merely puts the burden upon the defendant after certain facts have been proved by the State. Of course, if the State's proof of the preliminary facts shows that the defendant did not do any of the acts with "intent to defraud," then the burden is not shifted, and there is no presumption of guilt. The defendant, under the act, has the opportunity to present any fact in his defense to show that he was not actuated with any intent to defraud, and is given the benefit of anything in the State's evidence that negatives such an intent. So the contention of the plaintiff in error that the statute sets up a conclusive presumption and that a jury is required to find the defendant guilty is without merit. .

The plaintiff in error relies upon the case of *Manley* v. *State,* 279 U. S. 1 (supra) as being controlling of the present case, but we are of the opinion that the act which was construed in the *Manley* case is different from the act now under review. In that case the Supreme Court of the United States said: "State legislation declaring that proof of one fact, or a group of facts, shall constitute prima facie evidence of the main or ultimate fact in issue, is valid if there is a rational connection between what is proved and what is to be inferred. If the presumption is not unreasonable, *and is not made conclusive* [italics ours] of the rights of the person against whom raised, it does not constitute a denial of due process of law. Mobile, J. & K. C. R. R. *v.* Turnipseed, 219 U. S. 35, 43. A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the fourteenth amendment. Bailey *v.* Alabama, 219 U. S. 233 et seq. Mere legislative fiat may not take the place of fact in the determination of issues, involving life, liberty, or property. 'It is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' McFarland *v.* American Sugar Co.. 247 U. S. 79, 86. The presumption here involved does not rest upon any definite basis. It is raised upon proof of any one or more of the conditions described as insolvency and without regard to the facts from which such condition resulted. The statute does not specify

the elements of the offense; and so the inference is not restricted to any particular point or specific issue. The facts so to be presumed are as uncertain and vague as the terms 'fraudulent' and 'fraud' contrasted with 'fairly,' 'legally,' 'honestly,' and 'in accordance with law,' when used to describe the management of a bank. Connally v. General Construction Co., 269 U. S. 385, 391; Cline v. Frink Dairy Co., 274 U. S. 445, 454. Nor is the generality of the presumption aided by the allegations of the accusation. The indictment merely follows the general words of the statute, without specifying facts to disclose the nature or circumstances of the charge. *Snead* v. *State,* [165 *Ga.* 44, 54, 139 S. E. 812]."

In the instant case, the act of 1924 requires the State to prove the making, uttering, or delivering a check upon a bank, with the knowledge by the defendant that he did not have sufficient funds in such bank or "credit" with it for the payment of such check upon presentation. Upon proof of these facts the act declares it *"shall be prima facie evidence"* that the drawing or uttering of such check, etc., was with intent to defraud. It can not be held that there is no logical connection between the facts alleged and proved and the fact presumed. The relation between the two is obvious. If one draws a check and utters it, and obtains something of value by reason thereof, knowing at the time that he has not sufficient funds in the bank on which the check is drawn, nor "credit" at the bank, for the payment of the check, the natural and logical inference is that the act was done with intent to defraud; and it seems to us that there is nothing unreasonable about such a presumption. The fact presumed is the natural and logical result of the facts which must first be proved by the State.

Neither is the decision in Western & Atlantic R. Co. v. Henderson, 279 U. S. 639 (supra), which reversed the decision of the Supreme Court of Georgia in *Western & Atlantic R. Co.* v. *Henderson,* 167 *Ga.* 22 (144 S. E. 905), controlling. The facts in that case were different from the facts in the present case. There the question presented was whether the due-process clause of the fourteenth amendment to the constitution of the United States is violated by Civil Code § 2780, which is as follows: "A railroad company shall be liable for any damage done to persons, stock, or other property by the running of the locomotives, or cars, or other

machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." In that case the plaintiff's declaration alleged that the collision and the death of the plaintiff's husband were caused by negligence of defendant and its employees, in leaving the cars in a dangerous condition, in failing to sound the whistle, and to give warning or to keep a lookout ahead as the train approached the crossing; in that its employees, after they saw the truck upon the crossing, failed to stop the train, but accelerated its speed; in running at a dangerous speed; in operating the train by a "practically blind engineer." The answer denied that the defendant or any of its employees was guilty of negligence, and averred that the deceased came to his death as a result of his own fault. The plaintiff proved that her husband was killed in the collision. She offered some evidence of negligent maintenance, and a dangerous condition of the crossing; and it necessarily appeared that the train failed to stop in time to avoid the collision. It appears from the statement of facts in that case that "plaintiff offered no evidence, and there was none in the case, to support her allegations of negligence. Defendant offered much evidence to show that it and its employees exercised due care for the proper maintenance of the track and crossing and in the operation of the train, and that neither it nor any employee was guilty of any negligence charged." A verdict was returned in favor of the plaintiff. The defendant's motion for new trial was overruled, and it excepted, and the case came by writ of error to the Supreme Court of Georgia, where the judgment of the superior court was affirmed. The case was taken to the Supreme Court of the United States, which court reversed the judgment of affirmance, holding, in a decision rendered by Mr. Justice Butler, that the presumption raised by the Civil Code of Georgia (1910), § 2780, is unreasonable and arbitrary and violates the due-process clause of the fourteenth amendment. Mr. Justice Butler, among other things, said: "Legislation declaring that proof of one fact or group of facts shall constitute prima facie evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A prima facie presumption casts upon the person against whom it is

applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due-process clause of the fourteenth amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property. . . The mere fact of collision between a railway-train and a vehicle at a highway grade-crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway, or of both, or without fault of any one. Reasoning does not lead from the occurrence back to its cause. And the presumption was used to support conflicting allegations of negligence. Plaintiff claimed that the engineer failed to keep a lookout ahead, that he did not stop the train after he saw the truck on the crossing, and that his eyesight was so bad that he could not see the truck in time to stop the train." See Mobile &c. R. v. Turnipseed, 219 U. S. 35 (31 Sup. Ct. 136, 55 L. ed. 78); Gulf &c. R. Co. v. Brown, 138 Miss. 39, 66 (102 So. 855); Columbus &c. Ry. Co. v. Fondren, 145 Miss. 679 (110 So. 365). But the facts of the case at bar are different from those in Western & Atlantic R. v. Henderson, in several respects. In the first place, the statutes are different; in the next place, we are of the opinion that the statute under review, creating a presumption, is not arbitrary. Neither can it be held that the prima facie presumption created by the evidence for the State under the act does not lead from the occurrence back to its cause, nor that the presumption is a conclusive one. When one under the statute gives a check upon a bank where he has no funds and no "credit," the only natural and logical inference is that the check is given in order to defraud the payee of the check; and when the facts to be proved by the State are offered in evidence, then the prima facie presumption arises, and arises only when those facts are shown by the State; just as the presumption of malice arises in a case where a homicide is shown to have been committed. But in either case this presumption may be rebutted by proof. It is suggested that the defendant may have intended to make a deposit in the bank in order to meet the requirements of the check; but if that presumption is indulged, there could never be a conviction under a statute like the present, for the reason that the drawer of

the check would always claim immunity from conviction on the ground that he intended to place money in the bank for the purpose of meeting the check. A man is presumed to know the consequences of his act; and when he draws a check, having neither money nor credit in a bank upon which the check is drawn, he is presumed to know the fact, and that the check will not be paid.

A case somewhat similar to the instant one is that of *Smith* v. *State,* 141 *Ga.* 482 (3) (81 S. E. 220, Ann. Cas. 1915C, 999), where it was held that the act of 1910 (making it a misdemeanor to obtain food, lodging, or other accommodations at any hotel, inn, boarding-house, or eating-house, in this State, with intent to defraud the owner or keeper of the same), considered in its entirety, is not violative of the fourteenth amendment to the constitution of the United States. It was insisted in that case that the presumption created by the statute was unreasonable and arbitrary and amounted to a denial of due process of law, in violation of the fourteenth amendment to the constitution of the United States. It was said: "That proof that food, lodging, or other accommodation was obtained by false pretense, or by false or fictitious show or pretense of any baggage or other property by such person obtaining such food, lodging, or other accommodations; or that such person absconded without paying or offering to pay for such food, lodging, or other accommodation; or that such person gave in payment for such food, lodging, or other accommodation any check or draft made payable at sight, on demand, or on a date not subsequent to the date when the same is drawn, on which check or draft payment was refused on presentation; or that such person surreptitiously removed or attempted to remove his baggage or other property brought with him to such hotel, inn, boarding-house, or eating-house therefrom, without having paid for or having offered to pay for such food, lodging, or other accommodation so furnished him, shall be prima facie evidence of the fraudulent intent mentioned in section one of this act." It will be observed that the act of 1924, supra, provides that "the making, drawing, uttering, or delivering of such check, draft, or order as aforesaid shall be *prima facie evidence of intent to defraud.*" (Italics ours.) That is to say, the act so provides as to the making or uttering of such check with *knowledge* that the drawer has not sufficient funds or credit, for such knowledge on the part of the

maker is expressly referred to and is made an element creating the prima facie presumption, not conclusive presumption. As was said in *Berry* v. *State,* supra, "knowledge on the part of the defendant, at the time of the making, drawing, uttering, or delivering of either of said instruments, that the maker or drawer did not have sufficient funds," etc., is an essential element of the proof which must be made out before the prima facie presumption created by the act arises. It will be observed that the act of 1924 does not create any presumption based upon acts which the law anywhere expressly authorized, as in the *Manley* case, where a bank under the banking law of Georgia was authorized to lend eighty-five per cent of its deposits. The act under review does not create a presumption that has no logical connection with the proved facts which are declared to support the prima facie presumption. The act creates a prima facie presumption only which is reasonable and logical as was held in the *Berry* case, supra, and as in the presumption of malice in homicide cases.

The power of the legislature to make certain specified acts prima facie proof of the guilt of the accused, within proper limitations, has been declared by this court. *Griffin* v. *State,* 142 *Ga.* 636 (83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80) ; *Fordham* v. *State,* 148 *Ga.* 758 (98 S. E. 267) ; *Hawes* v. *State,* 150 *Ga.* 101 (103 S. E. 170). So we are of the opinion, that under the facts of this case, and in view of the authorities cited, the act of 1924 is not unconstitutional or void for any of the reasons assigned, and that the court did not err in denying the prayers of the petition and in remanding the petitioner to the custody of the sheriff.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., dissenting.*

Russell, C. J., dissenting. Without reference to, or consideration of, some of the grounds urged by the plaintiff in error, I am of the opinion that under the rulings of the Supreme Court of the United States in Manley *v.* State, and Western & Atlantic Railroad *v.* Henderson, referred to in the majority opinion, the act of 1924 under consideration offends the due-process clause of the fourteenth amendment to the constitution of the United States. Under the principles stated in these rulings, the mere drawing of a check upon a bank in which the drawer has no funds, and the fact that he has no credit or has made no arrangement with the

bank in question, is made sufficient to authorize a prima facie presumption of guilt and is presumptive proof of an intent to defraud. The intent to defraud is the crux of the entire case. If a check is drawn without an intent to defraud, there is no crime; and yet many instances can be imagined in which by agreement of the parties a check may be a substitute used to complete a transaction when the payee of the check is willing to accept this paper with full knowledge of all the facts. In such a case these facts would be no defense, because if one has drawn a check and has no funds or credit with the bank in question, he is presumed to be guilty. Unless he disproves the elements stated in the statute, he is necessarily guilty as matter of law. One can not be defrauded when he has not been deceived.