CHARLES WAYNE SMITHSON

*v.*

STATE OF TENNESSEE.

438 S.W.2d 61.

(*Nashville,* December Term, 1968.)

Opinion filed January 24, 1969.

500

Thomas D. Steele, Nashville, for plaintiff in error.

George F. McCanless, Attorney General, and C. Hayes Cooney, Assistant Attorney General, Nashville, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The plaintiff in error was convicted of passing a worthless check over the value of $100.00 in violation of T.C.A. 39-1959, and was sentenced for this offense for a period of not less than one (1) nor more than eight (8) years in the State penitentiary. A motion for a new trial was seasonably made, and, after being overruled, the case was appealed to the Court of Criminal Appeals, which court on motion of the State transferred the case to this Court because the only question involved in the case is a constitutional question.

Charles Wayne Smithson was indicted by the Williamson County Grand Jury at its January, 1968 Term, with fraudulently and feloniously obtaining property, a 1968 Chevrolet Camaro automobile, and credit from the Walker Chevrolet Company, a corporation, on October 12, 1967, by means of a check in the amount of $2,837.50 which was not paid by defendant after having been given five (5) days written notice to pay the same and after the defendant had stopped payment on said check at the drawee bank when it was presented for payment.

The sole assignment of error made on behalf of the defendant is that the statute under which the defendant was convicted, namely T.C.A. 39-1959, is unconstitutional on the grounds (1) that it is so vague, indefinite, and ambiguous as to violate the defendant's constitutional right to due process of law, and (2) that, under T.C.A. 39-1960, the presumption of intent to defraud and of insufficient funds in or on deposit with the drawee bank, corporation, firm or person created by the making, drawing, uttering or delivering of a check, draft or money order, payment of which is refused by the drawee and non-payment of such check, draft or order after five (5) days written notice to the maker or drawer, establishes a rule of evidence which unconstitutionally denies the defendant due process of law.

The old bad check law, which had been in force in this State for many years, was repealed by the Public Acts of 1967, Chapter 322, sec. 11 thereof, and the present statute governing such matters was enacted by that Chapter and is now codified in T.C.A., beginning at sec. 39-1959 et seq., and this is the first time in this State that the question here presented has been raised insofar as we can determine.

T.C.A. 39-1959 is sub-section (1) of Chapter 322, Public Acts of 1967, and this section makes it a criminal offense, either a misdemeanor or a felony depending upon the amount of the transaction involved, to make, draw, issue, utter or deliver with fraudulent intent a check, draft or order for the payment of money drawn on any bank, corporation, firm or person for the purpose of obtaining money, any article of value, or credit when the maker or drawer, at the time of such making, drawing, uttering or delivering knows that he or she does not have sufficient

funds in or on deposit with such bank, corporation, firm or person to pay said check, draft, or order in full and also to pay all other checks, drafts or orders upon such funds then outstanding.

The following section, T.C.A. 39-1960, provides that the making, drawing, uttering or delivering of such a check, draft or order, payment of which is refused by the drawee shall, as against the maker or drawer thereof, be prima facie evidence and create a presumption of intent to defraud and of the knowledge of insufficient funds on deposit in the bank, corporation, firm or person, provided such maker or drawer shall not have paid the holder thereof the amount due thereon within five (5) days after receiving notice that such check, draft or order has not been paid by the drawee.

The next section, T.C.A. 39-1961, construes or defines the term "notice" required in T.C.A. 39-1960 as including not only notice given to the person entitled thereto, namely the maker or drawer as stated in T.C.A. 39-1960 in person, but also written notice to such person and, further, provides that such written notice shall be presumed to have been given when it is deposited in the United States mail addressed to such person at his address as it appears on such person's check, draft or order, or addressed to his last known address.

The next section, T.C.A. 39-1962, provides that the aforesaid notice is not required when (a) the situs of the drawee is not the State of Tennessee, or (b) the drawer is not a resident of Tennessee or has left this State at the time of dishonor, or (c) when the drawer does not have an account with the drawee at the time the check, draft or order was issued or dishonored.

The next section, T.C.A. 39-1963 provides that the drawee has the duty, before refusing to pay the check, draft or order involved to the holder thereof upon presentation, to write, print or stamp thereon or attach thereto in plain language, the reason for the drawee's failure or refusal to honor the same. This section further provides that in all prosecutions under T.C.A. 39-1959 through 39-1967, the introduction in evidence of any unpaid and dishonored check, draft or other order for the payment of money, having the drawee's reason for refusal or failure to honor stamped or written thereon or attached thereto, shall be prima facie evidence of the making or uttering of said check, draft or other order for the payment of money and the dishonor thereof and that the same was properly dishonored for the reasons written or stamped thereon or attached thereto by the drawee.

T.C.A. 39-1964 provides that the provisions of T.C.A. 39-1959 through 39-1967 also apply to checks, drafts or orders given by any employer, with fraudulent intent, to an employee for services performed by such employee. The next section, T.C.A. 39-1965, provides that each making, drawing, issuing, uttering or delivering of any such check, draft or order as aforesaid constitutes a separate offense. T.C.A. 39-1966 provides the penalties for the violation of T.C.A. 39-1959 through 39-1965, as follows: (1) when the amount for which the check, draft, or order is drawn does not exceed $100.00, it shall be a misdemeanor punishable as provided in T.C.A. 39-105; and (2) when the amount for which the check, draft or order is drawn exceeds $100.00, the punishment is confinement in the penitentiary for not less than one (1) nor more than ten (10) years. This section also provides that the court may, upon recommendation of the jury in the

event of conviction, substitute imprisonment in the county jail or workhouse in lieu of the penitentiary confinement and further that upon demand reasonably made by the defendant, the trial jury is empowered to assess all punishment as part of their verdict and may, in lieu of penitentiary confinement, substitute imprisonment in the county jail or workhouse for any time less than one (1) year.

The last section of this statute involved, which is codified at T.C.A. 39-1967, provides that in cases where prima facie evidence is presented as hereinbefore defined and notice given, if required, any person, firm or corporation causing the arrest of the drawer of such check, draft or order shall not be criminally or civilly liable for false arrest.

The facts only sufficient to show what was involved are all that can be considered here, because the bill of exceptions was not filed in time, but the technical record is sufficient for the questions herein raised and to be answered by this Court. The plaintiff in error did not take the stand on his behalf and he contends that the introduction of this check here involved with "stop payment" on its face together with the written notice to make the check good within five (5) days created a presumption of intent to defraud and that the statute as worded raises such a presumption regardless of the reason for the refusal to honor the check. The plaintiff in error likewise asserts that such strong penal sanctions placed on a person for an act of this kind or forbearance which could in many instances be justified constitutes a denial of due process and is in irreconcilable conflict with the long established presumption of innocence.

506

■ It has always been held in this State that in order to warrant a conviction the prosecutor is required to discharge the burden imposed upon him by establishing by proof all the essential elements of the crime with which the man has been charged and to establish beyond a reasonable doubt that he is guilty of that crime, and when the proof does not establish that he is entitled to an acquittal. The argument of the plaintiff in error, it seems to us, is not borne out by the statute, because this statute does not make the defendant presumed guilty or to have the requisite intent to defraud the payee merely upon the bank's refusal to honor the same.

■ The presumption of intent to defraud and of knowledge of insufficient funds in or on deposit with the bank is by the express terms of the statute herein involved only when two requirements are met, namely, (a) that the check, draft or order is not honored when presented for payment and (b) the maker or drawer fails or refuses to pay the holder thereof the amount due thereon within five (5) days after receiving the notice of dishonor.

Section 39-1960, T.C.A., above, clearly, not ambiguously or uncertainly, states that as against the maker or drawer of a check, draft or order, the making, uttering, drawing or delivering of a check, draft or other order which is dishonored by the drawee shall be prima facie evidence and create a presumption of intent to defraud and of knowledge of insufficient funds in or on deposit with the drawee provided the maker or drawer does not pay the holder thereof the amount due within five (5) days after receiving notice of this dishonor. This statute expressly states that the legal presumption of the maker or drawer's intent to defraud and of such person's knowledge of insufficient funds to pay the check, draft or order

in full, together with all other then outstanding checks, drafts or orders arises only upon the making, uttering, drawing or delivering of a check, draft or other order for the payment of money, and after it is dishonored upon presentation and then his failure or refusal to pay the holder thereof, not the drawee, within five (5) days after receiving the required written notice.

This statute further expressly provides that proof of all three of these foregoing facts shall only constitute prima facie evidence of the maker or drawer's fraudulent intent and the drawer's knowledge of insufficient funds in or on deposit with the drawee bank, firm, corporation or person. Likewise T.C.A. 39-1963, or Section 5 of Chapter 322 of the Public Acts of 1967 of the General Assembly, clearly and expressly, not vaguely or ambiguously, provides, in the pertinent part thereof, that in all prosecutions under T.C.A. Sections 39-1959 through 39-1967, the introduction in evidence of any unpaid or dishonored check, draft or order, bearing the drawee's required reason for refusal written or stamped thereon or attached thereto, shall be prima facie evidence of (1) the making or uttering of said check, draft or order for the payment of money and (2) the dishonor thereof and (3) that the same was properly dishonored for the reasons indicated.

We think that these statutes are not so vague or ambiguous on their face as to deny this man, or any other man indicted thereunder, due process of law. The plaintiff in error has not shown any specific manner, satisfactory to us, in which this statute is vague or indefinite. The legal presumption in the very terms of the statute, T.C.A. 39-1960, clearly creates only a rebuttable presumption for that statute expressly states that certain

facts shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds. Likewise, T.C.A. 39-1963, expressly states that the introduction in evidence of a dishonored check with the drawee's required reason for dishonoring "shall be prima facie evidence of the making or uttering," etc. We think that the establishment of prima facie evidence, or a prima facie case as is presented by these statutes, does not displace the presumption of innocence which attended the defendant at his trial and further does not relieve the prosecutor of carrying its burden of proof, as above indicated.

█ The effect of the presumption set forth above in these various sections upon the introduction of certain evidence is merely to shift to the defendant, plaintiff in error here, the burden of going forward with the evidence to explain away the prima facie case made by the presumption set forth in T.C.A. 39-1960, but does not shift the burden of proof from the State.

This question has been considered by many courts in practically every State in the Union as well as the Federal Courts, and the question raised of the constitutionality of presumptive or prima facie evidence when such is declared by the Legislature has also been considered. In each of these cases, many of which we have read, the reason for the constitutionality is stated, but the best reasoning or clearest statement on this subject is contained in Wharton's Criminal Evidence, Vol. 1, page 176, sec. 91, thus:

"A statute making one fact presumptive of prima facie evidence of another is constitutional if the facts warrant the application of the rule of (1) rational relationship or (2) comparative convenience. Under

the first, the statutory presumption is held constitutional if in the experience of mankind there is a natural and rational relationship between the proved fact and the presumed fact so that in the ordinary experience of man the presumed fact would exist if the proved fact existed. Under the second, the statutory presumption is constitutional if (a) the defendant has more convenient access to proof which would overcome the presumed fact than the prosecution would have to prove the presumed fact, and (b) the placing upon defendant of the burden of overcoming the presumption does not subject him to an unfair burden or hardship.''

The author of this work then sets forth numerous cases wherein it has been held constitutional that a presumption of the kind is sufficient. One sentence of this is, ''the issuance of a check drawn on a bank in which the drawer does not have sufficient funds to pay the check is prima facie evidence of his intent to defraud by means of a worthless check.'' For this statement, above quoted, among the many cases cited is a case from this State of *Diamond v. State*, 123 Tenn. 348, 131 S.W. 666.

There are any number of different situations that can be found in the various and sundry cases wherein the proof of the fact and then other facts are made prima facie evidence of a certain fact, and this has been held to be sufficient. This is especially pertinent in cases in which it is analogous for these statutory presumptions which carry over from the common law certain rules of evidence making proof of one fact prima facie evidence of another. Among the many cases found for the rule is that the exclusive possession of goods recently stolen is prima facie evidence of guilt and

this puts upon the accused the burden of accounting for the possession, and another is where murder is inflicted with a deadly weapon in the previous possession of the slayer without any or upon slight provocation is prima facie evidence of the wilful and premeditated killing and throws upon the accused the necessity of showing extenuating circumstances. Such rules of evidence have been found to be neither unfair nor illogical in a long series of criminal trials.

It seems to us that under the situation as presented in this case there is a natural, rational, and evidentiary relation existing between the results of issuing this check and it coming back and showing no funds for such a prima facie presumption to be not unfair to the accused and makes it right that the accused should have an opportunity to explain this away. Now, of course, if the statute undertakes to make the evidence of certain facts absolute or conclusive proof of guilt then it would be unconstitutional, but statutes as these here when accompanied by a situation as presented in this case merely declare statutory presumption affecting the burden of proof and under such a situation are constitutional and valid.

The plaintiff in error relies upon our case of *Marie v. State*, 204 Tenn. 197, 319 S.W.2d 86, wherein we said a statutory presumption is unconstitutional if it deprives the defendant of the benefit of the presumption of innocence and places upon him the burden of proving his innocence. However, the Court in making this statement said this:

"It may be true, although we do not express an opinion at this time, that it is a question for the jury to deter-

mine whether or not the evidence offered by the defendants is sufficient to overcome the legal presumption against them. While we have the legal presumption against them, we also are mindful of the fact that in the trial court there was a presumption of innocence, and this presumption stands as a witness for them and until it is overcome by competent and credible evidence of such probative value as to establish their guilt beyond a reasonable doubt.''

In this case, speaking through the late Chief Justice Neil, and citing many cases regarding the definition and effect of such a presumption, we said:

"It is said in 31 C.J.S. Evidence, *supra,* at sec. 119: '* * * a presumption cannot *in itself* possess probative weight, but merely *necessitates evidence to meet the prima facie case which it creates',* citing numerous authorities in the footnotes. (Emphasis ours.)''

And further:

"Running through all our decisions there is a constant repetition of the generally accepted rule that proof of possessing intoxicating liquors as in the case at bar, constitutes *prima facie* evidence of guilt, and is sufficient only when there is no reliable and credible evidence offered in rebuttal. *Lampley v. State,* supra, 196 Tenn. 534, 268 S.W.2d 572.

" 'The effect of a presumption is to invoke a rule of law which compels the jury to return a verdict in accordance therewith, in the absence of any evidence to the contrary from the other side. If the opponent does present such evidence, then the presumption vanishes and the jury may consider the proof free from

any such rule.' 20 Am.Jur. (Evidence), Section 166, p. 170."

The Supreme Court of the United States in *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658, held that such a constitutional provision is not violated by a statutory inference where the accused is charged with carrying on the business of a distillery without giving the required bond. The question here under discussion is dealt with at length and very effectively in 29 Am.Jur.2d, Evidence, sec. 125, sec. 126, sec. 148 and sec. 152.

The presumption presented by this Act of the Legislature, particularly in T.C.A. 39-1960, is not a conclusive one. The plaintiff in error when he was tried was free to go forward with the evidence, whatever that might have been, showing any justification he had for causing a "stop payment" order to be issued on the check here involved by his own testimony or that of others. He was free to cross-examine the State's witnesses to show whether or not an erroneous stamp or attachment had been placed on this check or attached thereto or present his own witnesses to show such an error. The plaintiff in error contends that the obvious legislative intent of T.C.A. 39-1960 was to make the task of proving the dishonor of such check by the drawee easier for the State and that a fair trial dictates that the State prove by records and testimony the reason for dishonor by the drawee whether or not such requirement inconveniences a bank clerk for such a loose rule of evidence is fraught with danger as to constitute a denial of due process. This statute creates only prima facie evidence of the facts therein stated and the defendant is free to rebut this evidence by cross-examination of the State's witnesses

and the introduction of such records as he desires under the rules of evidence.

■ The further contention of the plaintiff in error is that if the term "refusal" was defined and limited in said statute to mean only "no such account" or "insufficient funds" together with notice this statute would be valid is in our judgment without merit since such limitation would permit evasion of T.C.A. 39-1959 and the unlawful conduct therein defined and penalized. Among others there is one purpose and object of these statutes and that is to prevent the obtaining of money, credit or any article of value by means of worthless checks which the drawer refuses or fails to honor to the holder after the required notice is given. A check which is not paid to the holder thereof because of a "stop-payment order" against it is of no more value to the holder than one which is not honored because the drawer does not have an account in or lacks sufficient funds in or on deposit with the drawee bank, firm, person or corporation to pay said check in full. In each of these instances the drawee has obtained money, credit, or other things like that and the holder has not been paid therefor.

■ Of course, it is a well settled rule in this State, and in all others as far as we know, that all statutes are presumed to be constitutional, *O'Brien v. Rutherford County*, 199 Tenn. 642, 288 S.W.2d 708 and others, and such a presumption is a strong one.

We have defined due process of law in *Van Zandt v. State*, 218 Tenn. 187, 402 S.W.2d 130, as:

"The true test, it seems to us, is whether 'fundamental fairness' and 'substantial justice' which, after all, are

what is meant by 'due process of law,' under the Fourteenth Amendment, are absent or present."

Another presumption which has been indulged in since the beginning of time in these cases is the presumption of malice in homicide cases in which it has been held that the presumption may be negatived by proof submitted by the State. This is a similar kind of presumption, a similar kind of thing. Another interesting proposition is where the legislation creates a presumption of intoxication or the like from the presence of a specified percentage of alcohol in the blood. This question is well annotated in 46 A.L.R.2d, beginning at page 1176, and is a similar kind of presumption to that in this case, and the same rules govern such presumptions as quoted from Wharton, supra.

After fully considering this matter there is no doubt in our mind but that the statute in question that we have paraphrased and almost quoted literally in this opinion is constitutional. The judgment below must be affirmed.