STATE OF HAWAII, Plaintiff-Appellee *v.* VERN DWYER, Defendant-Appellant

NO. 5799

FEBRUARY 9, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This is an appeal from a conviction of negotiating a worthless negotiable instrument in violation of HRS § 708-857.[1] We reverse.

---

[1] The relevant provisions of HRS § 708-857 are:

§ 708-857 Negotiating a worthless negotiable instrument. (1) A person commits the offense of negotiating a worthless negotiable instrument if he intentionally issues or negotiates a negotiable instrument knowing that it will not be honored by the maker or drawee.

(2) For the purpose of this section, as well as in any prosecution for theft committed by means of a worthless negotiable instrument, either of the following

On July 11, 1974, Appellant signed and delivered to one Michael Kramer a check drawn on Bank of Hawaii, payable to Kramer in the sum of $300 in payment of wages. On that date, Appellant's account in Bank of Hawaii had a balance in excess of $1200. Kramer deposited the check on July 15, 1974 in Hawaii National Bank, which bank presented the check for payment to Bank of Hawaii on July 16, 1974. After the payment of two other checks presented on July 15, 1974, Appellant's account in Bank of Hawaii had a balance at the opening of business on July 16, 1974 in excess of $800. On July 16, 1974 a check for $750 was charged against the account and the Kramer check was refused payment for insufficient funds. The check was returned to Kramer approximately one week later and was subsequently discussed by Kramer with Appellant. In this discussion Appellant raised a question about the work done by Kramer for which the check had been issued. Appellant did not make the check good or otherwise settle with Kramer.

The foregoing facts were developed in the prosecution's case, with no conflict in the evidence. The facts with respect to Appellant's bank account were testified to by a representative of the bank and shown by a copy of Appellant's bank statement. Appellant testified in his own defense to the effect that when the check was drawn to Kramer his checkbook reflected a balance of over $500. Nothing in Appellant's testimony added to the case for the prosecution.

Appellant contends that there was no substantial evidence that Appellant signed the Kramer check knowing it would not be honored by his bank. It is clear that the gravamen of the offense as defined in HRS § 708-857 is the issuance of a check knowing at that time that it will not be honored.

shall be prima facie evidence that the drawee knew that the negotiable instrument would not be honored upon presentation:

(a) The drawer had no account with the drawee at the time the negotiable instrument was negotiated; or

(b) Payment was refused by the drawee for lack of funds upon presentation within a reasonable time after negotiation or delivery, as determined according to section 490:3-503, and the drawer failed to make good within ten days after actual receipt of a notice of dishonor, as defined in section 490:3-508.

The prosecution thus had the burden of proving the existence of this knowledge in the mind of Appellant on July 11, 1974. The State sought to discharge this burden by reliance on HRS § 708-857(2)(b). This section provides that when a check is dishonored due to lack of funds upon presentation within a reasonable time and the drawer fails to make the check good within 10 days of receiving actual notice of dishonor, these facts shall be prima facie evidence that the drawer knew when he issued the check that it would not be honored upon presentation.

The facts required by the statute are present in this case, but aside from these facts and any inferences which may properly be drawn therefrom the record contains no direct or circumstantial evidence that the defendant possessed the requisite knowledge. In fact the evidence produced by the prosecution affirmatively showed that when Appellant drew the check and delivered it to Kramer, and even for four days thereafter, there were sufficient funds in Appellant's account to cover the check. While these funds were shown to have been exhausted by other checks drawn by Appellant there was nothing in the prosecution's case to show when those checks were written. Without this evidence we cannot infer that they were written before the Kramer check. Moreover, if the check had been presented for payment on any day prior to July 16, 1975, there is nothing to show that it would not have been paid in the ordinary course. To infer, under these circumstances, that Appellant knew that the Kramer check would not be paid upon presentation requires that we also infer that he knew the Kramer check would not be presented on or before July 16th. There is nothing to support the latter inference.

Thus we are left with only the prima facie evidence provided by HRS § 708-857(2)(b) to support the conviction. HRS § 701-117 provides:

§ 701-117 Prima facie evidence. Prima facie evidence of a fact is evidence which, if accepted in its entirety by the trier of fact, is sufficient to prove the fact, provided that no evidence negativing the fact, which raises a

reasonable doubt in the mind of the trier of fact, is introduced.

Wigmore points out that the designation of certain facts as "prima facie evidence" of an ultimate fact may be viewed either as creating a presumption which shifts the burden of proof or as merely creating a permissible inference of fact. In the first sense the statute imposes on the accused the burden of overcoming the presumption by evidence, in default of which the presumption requires that guilt be found. In the second sense, the trier of fact is permitted but not compelled to draw an inference of guilt from the circumstances which constitute a prima facie case, and it is for the trier of fact to determine whether a reasonable doubt of guilt exists despite the permitted inference, whether or not the accused has offered any evidence. WIGMORE, EVIDENCE § 2494 (3d ed. 1940). Also see McCORMICK, EVIDENCE § 342 (2d ed. 1972). We have held invalid a statutory presumption which requires the accused to disprove the existence of any element of the offense. *State v. Cuevas,* 53 Haw. 110, 488 P.2d 322 (1971). It is apparent from the commentary to HRS § 701-117 that the draftsmen intended that the statute be read in the second sense, as permitting but not compelling the inference of guilt, and we conclude that it should be given this effect. Similar conclusions were reached in *Smithson v. State,* 222 Tenn. 499, 438 S.W.2d 61 (1969); and *State v. Haremza,* 213 Kan. 201, 515 P.2d 1217 (1973). But a constitutional question still remains.

The requirements of due process impose limitations on the power of the legislature to authorize inferences of fact to be drawn. For this purpose, it does not matter whether the statute treats the evidence as making out a prima facie case or as creating a presumption. Whichever characterization is used, the statute may authorize the inference only if there is a natural and rational evidentiary relation between the facts proven and the ultimate fact which the statute authorizes to be found. *State v. Haremza, supra.* The constitutional validity of such a statutory rule of evidence is to be tested as follows:

A statutory presumption cannot be sustained if there

be no rational connection between the fact proved and the fact presumed, if the inference of one from proof of the other is arbitrary because of a lack of connection between the two in common experience. (*Tot v. United States*, 319 U.S. 463, 467 (1943)).

In *Leary v. United States*, 395 U.S. 6, 36 (1969), the test was restated:

[A] criminal statutory presumption must be regarded as "irrational", or "arbitrary" and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. And in the judicial assessment the congressional determination favoring the particular presumption must of course weigh heavily.

We may assume for the purpose of the present case that there is the necessary rational connection between the fact of non-payment of a check and the inference which HRS § 708-857(2)(b) permits to be drawn from this fact, without deciding that question.[2] We have before us here factual circumstances which are not limited to those from which the statute draws the inference. The prosecution's case included the fact that Appellant's account was sufficient to cover the check when it was issued and for a sufficient time thereafter to have reasonably enabled it to have been presented and paid. The statutory inference must be appraised in light of this fact. *State v. Campbell*, 97 Idaho 331, 543 P.2d 1171 (1975), was a prosecution under a statute which defined the offense as the making of a check with intent to defraud and with knowledge that there were insufficient funds for pay-

---

[2] Most courts which have directly confronted this issue in dealing with similar bad check statutes have upheld the validity of such provisions. Cf. *Tolbert v. State*, 321 So. 2d 227, 231 (Ala.); *State v. Haremza*, 213 Kan. 201, 515 P.2d 1217, 1222-1224 (1973); *Smithson v. State*, 222 Tenn. 499, 438 S.W. 2d 61, 65-67 (1959); *Ray v. State*, 229 So. 2d 579, 581 (Miss. 1969) (reh. den. 1970); *State v. Elkin*, 177 La. 427, 148 So. 668 (1933); *People v. Bullock*, 123 Cal. App. 299, 11 P.2d 441 (1932); *Carter v. Lowrey, Sheriff*, 169 Ga. 515, 151 S.E. 23 (1929); *Berry v. State*, 153 Ga. 169, 111 S.E. 669, 35 A.L.R. 370 (1922).

ment. The statute further provided that the making of the check with insufficient funds in the account should be prima facie evidence of such intent and knowledge. The appeal presented the question whether such prima facie evidence was sufficient for conviction, where the defendant was charged with having given the check as payment for past-due wages owed. Past decisions of the Idaho court had established that the rational connection test was met under the factual circumstances designated in the statute. Nevertheless, the court considered the validity of the statutory inference in light of the facts pleaded by the prosecution, saying:

[W]hen an insufficient funds check is given in payment of a preexisting obligation it is not likely that the maker had an intent to defraud, although it is legally possible that he did have such an intent. Therefore, we hold that to the extent that I.C. § 18-3106(d) presumes an intent to defraud from the giving of an insufficient fund check in payment of a preexisting obligation that presumption is not based upon common experience, there being an insufficient relationship "between the fact proved and the ultimate fact to be presumed." *State v. Grimmett, supra.* We cannot say that "the presumed fact is more likely than not to flow from the proved fact," *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed. 2d 57 (1969), and therefore the presumption under the circumstances of this case is arbitrary, irrational and therefore unconstitutional. As stated in *Tot v. United States, supra:*

"[W]here the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts." 319 U.S. 468, 63 S.Ct. 1245. (543 P.2d at 1174-1175).

We have held that an inference of guilt could not be drawn from circumstantial evidence introduced by the prosecution, in the face of an uncontradicted explanation of the facts provided by the sole prosecution witness which supported an inference of innocence. *State v. Benton,* 56 Haw. 409, 538 P.2d 1206 (1975). As was said in *Rodgers v. United States,* 402

F.2d 830 (9th Cir. 1968), in language which we quoted in *Benton,* on such a record the inferences of guilt are not available to the prosecution.

The validity of the inference which HRS § 708-857(2)(b) purports to permit to be drawn by the trier of fact in this case must be appraised under all of the factual circumstances which made up the prosecution's case. The proven fact that the check was covered by funds in Appellant's account when it was issued and for a sufficient time thereafter to reasonably permit its presentment and payment does not, in our opinion, permit a rational inference to be drawn, from the facts of dishonor and failure to make the check good, that Appellant knew that the check would not be paid on presentation. Under the circumstances, therefore, the statutory inference could not validly be drawn from the facts of dishonor and failure to make the check good, and proof of these facts did not make out a prima facie case for the prosecution.

There being no other evidence to support the conviction, the judgment is reversed.

*Rodney Kim* for Defendant-Appellant.

*Randolph Slaton,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.