## STATE OF HAWAII, Plaintiff-Appellee, *v.* DAVID BRIGHTER, Defendant-Appellant

NO. 6334

JUNE 1, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICES MARUMOTO AND KOBAYASHI
ASSIGNED BY REASON OF VACANCIES

100

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant David Brighter (hereinafter appellant) was convicted by a jury of the offense of promoting a detrimental drug in the second degree. He now alleges error in the giving of a jury instruction relating to the statutory inference set out in HRS § 712-1251 (1976).[1] Appellant contends that the inference permitted by that statute constitutes a violation of due process.

We uphold the constitutional validity of HRS § 712-1251 (1976) as we have restrictively construed it. However, we reverse appellant's conviction due to inadequacy of jury instructions given with respect to the statutory inference.

---

[1] HRS § 712-1251 (1976) provides as follows: .

*Possession in a motor vehicle; prima facie evidence.* (1) Except as provided in subsection (2), the presence of a dangerous drug, harmful drug, or detrimental drug in a motor vehicle, other than a public omnibus, is prima facie evidence of knowing possession thereof by each and every person in the vehicle at the time the drug was found.

(2) Subsection (1) does not apply to:

(a) Other occupants of the motor vehicle if the substance is found upon the person of one of the occupants therein; or

(b) All occupants, except the driver or owner of the motor vehicle, if the substance is found in some portion of the vehicle normally accessible only to the driver or owner; or

(c) The driver of a motor vehicle who is at the time operating it for hire in the pursuit of his trade, if the substance is found in a part of the vehicle used or occupied by passengers.

The term "prima facie evidence" is defined in HRS § 701-117 (1976) as follows:

*Prima facie evidence.* Prima facie evidence of a fact is evidence which, if accepted in its entirety by the trier of fact, is sufficient to prove the fact, provided that no evidence negativing the fact, which raises a reasonable doubt in the mind of the trier of fact, is introduced.

## I.

The facts are relatively uncomplicated. On the evening of January 8, 1976, appellant and a companion, Steven Manning, were arrested when marijuana was discovered in the back seat of the automobile in which they had been traveling. Appellant was the driver of the automobile, which was stopped by Honolulu Police Officer Kevin Shannon for a traffic violation.

Officer Shannon testified that as he stood on the passenger side of the vehicle while writing out a traffic citation, he noticed an open shopping bag containing what appeared to be marijuana on the right rear seat of the vehicle. After issuing the citation to appellant, Officer Shannon ordered appellant and Manning out of the vehicle. The shopping bag was then retrieved from the rear seat. It was found to contain seven clear, plastic "Ziploc" bags, each containing marijuana. The aggregate weight of the marijuana was 468.9 grams, or slightly over one pound.

The evidence offered by appellant indicated that he had borrowed the automobile that evening from a friend in Kailua in order to go shopping.[2] Appellant and Manning then drove to Ala Moana Shopping Center, where they shopped separately for a period of time.[3] After completing their shopping, appellant and Manning met at a prearranged location and returned to the automobile. Upon returning to the automobile, it was discovered that one of the tires had gone flat. Appellant testified that he removed the flat tire and took it to have it repaired at a service station. He stated that by the time he returned with the repaired tire, Manning had arranged all of their packages in the rear seat of the automobile. Appellant replaced the tire and he and Manning proceeded to drive

---

[2] There is no dispute that appellant was not the owner of the subject vehicle. Appellant maintained that he did not check the rear seat of the automobile when he obtained the vehicle from his friend in Kailua.

[3] According to appellant, the automobile was not locked while at the shopping center due to a malfunctioning door lock.

home. Shortly after leaving Ala Moana Shopping Center, they were stopped by Officer Shannon. Appellant has disclaimed any knowledge of the presence of the marijuana in the automobile.

At trial, the prosecution relied entirely upon HRS § 712-1251 (1976) to establish the element of appellant's "knowing possession" of the marijuana.[4] The jury found appellant guilty as charged,[5] and he was consequently placed on probation for a period of one year, with the special condition that he spend 13 weekends in Halawa Correctional Facility.

II.

Appellant objects solely to the giving of State's Requested Instruction No. 2,[6] which was grounded upon HRS § 712-1251(1) (1976). In essence, appellant argues that the provisions of HRS § 712-1251(1) (1976) impermissibly shift the burden of proof to the defense, thus depriving him in this instance of his due process right to be convicted only upon proof by the prosecution of guilt beyond a reasonable doubt.

Cognizant of those circumstances under which proof of an element of a crime cannot be shown by direct evidence,

---

[4] Appellant was convicted under HRS § 712-1248(1)(c) (1976), which provides as follows:

*Promoting a detrimental drug in the second degree.* (1) A person commits the offense of promoting a detrimental drug in the second degree if he *knowingly*:

\* \* \* \* \*

(c) *Possesses* one or more preparations, compounds, mixtures, or substances, of an aggregate weight of one ounce or more, containing any marijuana; . . .

\* \* \* \* \*

(2) Promoting a detrimental drug in the second degree is a misdemeanor. [Emphasis added.]

[5] The record does not indicate whether Steven Manning was similarly charged and convicted.

[6] State's Requested Instruction No. 2, as given, told the jury the following:

The presence of a detrimental drug in a motor vehicle, other than a public omnibus, is prima facie evidence of knowing possession thereof by each and every person in the vehicle at the time the drug was found.

legislatures often provide for the inference of such elements of a crime based upon the existence of other proven facts. HRS § 712-1251 (1976) provides such an inference. However, as this Court has stated, "[t]he requirements of due process impose limitations on the power of the legislature to authorize inferences of fact to be drawn." *State v. Dwyer*, 57 Haw. 526, 529, 560 P.2d 110, 112 (1977).

In enacting HRS § 712-1251 (1976), our legislature was concerned with the practical impossibility of proving by direct evidence the knowing possession of drugs when such drugs, although discovered in a motor vehicle, are not actually upon the person of any of the occupants. Commentary on HRS § 712-1251 (1976). Under HRS § 712-1251(1) (1976), the presence of any drug in a motor vehicle is prima facie evidence of knowing possession of the drug by each and every person in the vehicle at the time the drug was found.

The phrase "prima facie evidence", defined in HRS § 701-117 (1976), constitutes a permissive inference, thus permitting — but not compelling — the inference of guilt. *Dwyer, supra*, 57 Haw. at 529, 560 P.2d at 112.[7] In *Dwyer, supra*, this Court stated that a statute may authorize an inference "only if there is a natural and rational evidentiary relation between the facts proven and the ultimate fact which the statute authorizes to be found." 57 Haw. at 529, 560 P.2d at 112.

---

[7] We point out that the words "presumption" and "inference" have been utilized somewhat interchangeably by courts and legislatures, thus resulting in much confusion. Perhaps it would be instructive to consider the words of the New York Court of Appeals in *People v. Leyva*, 38 N.Y.2d 160, 168-69, 341 N.E.2d 546, 551, 379 N.Y.S.2d 30, 37 n. 3 (1975):

> Legislatures have been somewhat loose in their use of the word "presumption" when an inference is clearly what is intended, thus leading to a good deal of unnecessary confusion. Permissible inferences, based on specified underlying facts which must first be proven before the inference may be drawn, should be distinguished carefully from those rules of jurisprudence which operate simply to place the burden of proof (as an affirmative defense is placed upon a defendant) or which describe basic value judgments of our system (as the rule that defendants are to be "presumed" innocent until proven guilty or the "presumption" against suicide). It is only such rules, rather than statutorily authorized inferences, which carry a requirement that the jury be told that, if it finds the facts in doubt, it *must* follow the "presumption". [Citations omitted.]

Appellant urges, however, that an inference may be sustained only where the fact inferred follows *beyond a reasonable doubt* from the fact proven. Absent such a relationship between the fact inferred and the fact proven, it cannot, appellant asserts, be said that a defendant has been convicted upon proof beyond a reasonable doubt of all the elements of the offense. *In re Winship*, 397 U.S. 358 (1970); *State v. Bannister*, 60 Haw. ____, 594 P.2d 133 (No. 6712 — May 1, 1979); *State v. Napeahi*, 57 Haw. 365, 556 P.2d 569 (1976); *State v. Cuevas*, 53 Haw. 110, 488 P.2d 322 (1971).

Although courts have acknowledged the ability of legislatures to provide that a jury may infer from one fact another fact essential to a finding of guilt, *see Tot v. United States*, 319 U.S. 463, 467 (1943), much debate has centered around the strength of the relationship which must exist between the fact proven and the fact inferred. In *Tot v. United States, supra,* the Supreme Court declared that a "rational connection" must exist between the fact proven and the fact inferred in order to satisfy the requirements of due process.[8] This "rational connection" test was followed in *United States v. Gainey*, 380 U.S. 63 (1965), and in *United States v. Romano*, 382 U.S. 136 (1965).

Later, in *Leary v. United States*, 395 U.S. 6, 36 (1969), the Supreme Court determined that a criminal statutory inference is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." However, because the Court in *Leary* found the statute in question to be unconstitutional under the "more likely than not" standard, it went on to state that "we need not reach the question whether a criminal presumption [inference] which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." 395 U.S. at 36 n. 64.

---

[8] The Court stated in *Tot* that a rational connection cannot exist if the inference of one fact from proof of the other "is arbitrary because of lack of connection between the two in common experience." 319 U.S. at 467-68.

In *Turner v. United States*, 396 U.S. 398 (1970), the Court utilized both the "more likely than not" and the "reasonable doubt" standards to assess the validity of four statutory inferences relating to possession of heroin and cocaine. In deciding that the inferences relating to heroin were valid under either standard, the Court clearly refrained from expressing a preference for the use of one test over the other.

Finally, in *Barnes v. United States*, 412 U.S. 837 (1973), the Court again reserved judgment as to the determinative standard by which the validity of statutory inferences are to be assessed. After acknowledging that *Cainey, Romano, Leary,* and *Turner* fail to resolve the issue, the Court in *Barnes* merely concluded that "if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." 412 U.S. at 843.

State courts have as a result disagreed and have proceeded on occasion to opt for one test over the other. In *State v. Odom*, 83 Wash. 2d 541, 520 P.2d 152 (en banc), *cert. denied,* 419 U.S. 1013 (1974), only the reasonable doubt standard was sanctioned by the court in its refusal to sustain an inference of intent to commit a crime of violence from the fact that the defendant was armed with an unlicensed pistol. In *City of Portland v. Kirk*, 16 Ore.App. 329, 518 P.2d 665 (1974), however, the court held that nothing in *Barnes, supra,* mandated the selection of the more stringent reasonable doubt test. Thus, a statutory inference that the person responsible for a parking violation is the registered owner of the automobile involved was upheld under the "rational connection" and "more likely than not" standards.

In determining the constitutionality of HRS § 712-1251 (1976), we have directed considerable attention to the cases cited above. However, our decision today is primarily influenced by recent cases which have construed the New York counterpart to HRS § 712-1251 (1976). The New York statute, N.Y. Penal Law § 220.25 (McKinney 1967), is quite similar to

HRS § 712-1251 (1976), and provides as follows:

> The presence of a dangerous drug in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such drug was found; . . . .[9]

This statute was upheld in *Lopez ex rel. Garcia v. Curry*, 583 F.2d 1188 (2d Cir. 1978). *Lopez* was a habeas corpus proceeding which resulted from Garcia's conviction in state court for narcotics possession and possession with intent to sell. The facts showed that Garcia and two other defendants were arrested when a brown manila envelope containing nearly one kilogram of cocaine was discovered by police officers to be protruding from beneath the front seat of the automobile in which the defendants were traveling. All three convictions were based upon the inference permitted by Penal Law § 220.25. The court of appeals in *Lopez* held the New York statute constitutional on its face when applied to "large quantities" of narcotics.[10]

The court in *Lopez* first relied upon the authoritative construction placed upon § 220.25 by the New York Court of Appeals, which had held that under the statute, "[a] jury is not

---

[9] By subsequent amendment, the term "dangerous drug" was changed to "controlled substance". N.Y. Penal Law § 220.25 (McKinney 1978-79 Supp.).

[10] Interestingly, in *Allen v. County Court*, 568 F.2d 998 (2d Cir. 1977), *cert. granted*, ____ U.S. ____, 99 S.Ct. 75 (1978), the same circuit court of appeals had earlier struck down N.Y. Penal Law § 265.15(3) (McKinney 1976-77 Supp.), "which in language nearly identical to that of § 220.25(1) made presence in a car with a firearm presumptive evidence of possession" by all persons occupying the car at the time the gun was found. *Lopez, supra* at 1192 n. 8. *Allen* was thus distinguished by the court in *Lopez, supra* at 1192 n. 8:

> Noting the absence of legislative findings to support the presumption, we found [in *Allen*] no rational basis for the inference of possession from presence. The holding, however, carefully distinguished the case of § 220.25(1), 568 F.2d at 1008 n. 18, because of the legislative history of the narcotics presumption. In addition, because the presence of drugs in an automobile is more suspicious than the presence of a gun, the likelihood of an occupant's innocence is correspondingly less when the contraband in question is narcotics and not firearms. *Id.* Finally, Judge Fuchsberg, who wrote the [*People v.*]*Leyva* opinion, dissented from the state court opinion upholding the firearms presumption. [Citation omitted.].

to be told that it *must* find defendants guilty if the prosecution proves that they and drugs were present in a car together; it is only to be told that it *may* so find." *People v. Leyva,* 38 N.Y.2d 160, 167, 341 N.E.2d 546, 550, 379 N.Y.S.2d 30, 36 (1975). Hence, the court concluded that the inference permitted by the statute could not possibly operate as tantamount to a presumption of guilt, but that a jury would be entirely free to accept or reject the conclusions permitted by the inference.

Second, the court in *Lopez* found ample justification for the legislative determination that those discovered in an automobile with "dealership quantities" of controlled substances are more likely than not to have "knowing possession" of such substances. The court relied upon a comprehensive report compiled by New York's Temporary Commission to Evaluate the Drug Laws. The Commission stated in its report that it was entirely rational to presume that all occupants of a vehicle are aware of the presence of drugs found in the vehicle when the quantity of the drugs involved is substantial. The court thus upheld N.Y. Penal Law § 220.25 on its face.

We turn now to application of the reasoning and principles set out in *Lopez* to the case presently before us. We first note that in assessing the constitutionality of statutory inferences, significant weight should be accorded to legislative determinations upon which such inferences are based. *United States v. Gainey, supra* at 67. However, a court may also take into account through judicial notice, if necessary, other pertinent helpful information which may be available. *United States v. Gonzalez,* 442 F.2d 698, 707 & n. 4 (2d Cir. 1970), *cert. denied,* 404 U.S. 845 (1971).

In drafting HRS § 712-1251 (1976), our legislature consulted and relied upon N.Y. Penal Law Article 220, of which N.Y. Penal Law § 220.25 is a part. *See* Appendix 3 (Table of Derivation), HRS Title 37 (Hawaii Penal Code) (1976). We find, therefore, that the determinations underlying N.Y. Penal Law § 220.25 are pertinent to assessments by this Court of the constitutionality of HRS § 712-1251 (1976). In this pursuit, we take judicial notice of the New York State Commission Report considered in both *Lopez, supra,* and *People*

*v. Leyva, supra.* We regard the conclusions stated in that report to be soundly authoritative.

In its report, the New York State Commission made these determinations:

> We believe, and find, that it is rational and logical to presume that all occupants of a vehicle are aware of, and culpably involved in, possession of dangerous drugs found abandoned or secreted in a vehicle when the quantity of the drug is such that it would be extremely unlikely for an occupant to be unaware of its presence. *We further find that the quantity of drug which reasonably indicates culpable involvement is the quantity of drug which would clearly set apart the distributor from the possessor for personal use.*
>
> We do not believe that persons transporting dealership quantities of contraband are likely to go driving about with innocent friends or that they are likely to pick up strangers. We do not doubt that this can and does in fact occasionally happen, but because we find it more reasonable to believe that the bare presence in the vehicle is culpable, we think it reasonable to presume culpability in the direction which the proven facts already point. . . .
>
> We cannot, however, by the same logic justify the presumption as it would apply to small quantities of dangerous drug which may be possessed for personal use. While occupants of a vehicle may in some instances be aware of the fact that another occupant possesses dangerous drugs, there is little in the nature of the offender's possession which logically leads to the conclusion that others in the vehicle are aware of or, (more significantly), culpably involved in the offender's possession.

Interim Report of the Temporary State Commission to Evaluate the Drug Laws, Proposed New York State Controlled Substances Act and Revision of Article 220 of the Penal Law, New York Legislative Document No. 10 (1972) at 69-70 (emphasis added). We are convinced, based upon these conclusions, of the rationality of inference of the element of "knowing possession" from facts proving the presence in a motor

vehicle of the defendant and drugs in excess of small quantities possessed for personal use.

Like the court in *Lopez,* we find no need to resolve the question whether an inference satisfying the "more likely than not" requirement must also comply with the criminal reasonable doubt standard. 583 F.2d at 1191 n. 7. As stated in *Lopez,* the "more likely than not" and "reasonable doubt" standards are separated by "variations in language and focus rather than [by] differences of substance." *Id., quoting Barnes v. United States, supra,* 412 U.S. at 843. Therefore, "[w]e, in any event, conclude that the connection between proven and presumed facts established by [HRS § 712-1251 (1976)] is sufficient, as applied to dealership quantities of [controlled substances], to satisfy either formulation of the Constitutional requirement." *Lopez, supra* at 1191 n. 7.

Although the term "dealership quantities" does not, by its very nature, lend itself to precise quantification, we are satisfied that the guideline encompassed by that term can be realistically applied. In its report, the New York State Commission addressed the matter directly:

We further find that the quantity of drug which reasonably indicates culpable involvement is the quantity of drug which would clearly set apart the distributor from the possessor for personal use.

We do not believe it to be beyond the resources and experience of the prosecution to establish that the quantity of drugs involved in a given case is sufficient to "clearly set apart the distributor from the possessor for personal use." The qualified testimony of law enforcement personnel, as well as evidence relating to the overall quantity of drug involved and its probable per unit price at the time of purchase, may be some of the factors relevant to a determination of whether the quantity of drug involved exceeds that which would ordinarily be possessed for personal use.

Therefore, we would require that the prosecution establish beyond a reasonable doubt that the quantity of drug involved is clearly greater than a quantity which may be possessed for personal use. A jury would be required, then, under appropriate instruction, to find as an additional under-

lying fact under HRS § 712-1251 (1976) that the drug involved is clearly not of such quantity as to ordinarily be intended for personal use. Absent such a determination, a jury would not be justified in concluding that the statutory inference should be applied.

We thus hold that HRS § 712-1251 (1976) is constitutional when applied to quantities of drugs which are clearly greater than quantities which would be possessed merely for personal use. We note, however, the absence below of any jury instruction relating to the issue of the quantity of drug involved. This omission, in our opinion, requires that we reverse appellant's conviction and remand the case for new trial.

### III.

While our holding in Part II, *supra,* is dispositive of this case, we find it necessary to take up an additional issue concerning HRS § 712-1251 (1976).

As indicated by our discussions in Part II, *supra,* we find no impropriety per se in the content of State's Requested Instruction No. 2 as given. However, the court below also went on to give the following instruction immediately after giving State's Requested Instruction No. 2:

Prima facie evidence of a fact is evidence which if accepted in its entirety by the trier of fact, is sufficient to prove the fact, provided that no evidence negativing the fact, which raises a reasonable doubt in the mind of the trier of fact, is introduced.

This instruction, State's requested Instruction No. 4, [11] is quite similar in nature to a jury instruction which was ultimately invalidated in *Lopez, supra.* In *Lopez,* the trial court told the jury that if it believed from the evidence that cocaine was in the car at the time of the defendant's arrest, then the

---

[11] We recognize that appellant has not directly objected to the giving of this instruction. However, for the sake of clarity in future cases, we proceed to consider the propriety of the instruction.

prosecution was "entitled to the presumption" that the defendant knowingly possessed the drug. 583 F.2d at 1190 n. 3. The trial court in that case went on to tell the jury that the defendants could rebut the presumption by coming forward with evidence that would "raise a reasonable doubt in your minds that the defendant possessed this cocaine." *Id.* at 1192. The court of appeals in *Lopez* held that by so instructing the jury, the trial court shifted the burden of proof to the defendants on the element of knowing possession. The court went on to say:

> No matter how persuasive the evidence of guilt may seem to the court, a defendant does not carry the burden of disputing it, nor does his failure to offer evidence on an element of the crime change or satisfy the prosecutor's burden.

*Id.* at 1192-93.

In the instant case, the giving of State's Requested Instruction No. 4 similarly served to shift the burden of proof to appellant. The instruction charged that proof of the underlying facts "is sufficient to prove the fact" of knowing possession, provided that no contrary evidence amounting to a reasonable doubt "is introduced." Although the instruction faithfully tracked the language of HRS § 701-117 (1976),[12] we are not fully convinced that the jurors could not have been misled into thinking that they were *required* to find the element of knowing possession in the absence of defense evidence amounting to a reasonable doubt. In view of our holding that only *permissive* inferences may arise under HRS § 701-117 (1976), *State v. Dwyer, supra,* the jury should have been given a clarifying instruction to the effect that it *could* — but was not *required* to — find the element of knowing possession upon proof of the underlying facts.

Accordingly, we hold that the giving of State's Requested Instruction No. 4 without such a clarifying instruction "so

---

[12] See n. 1, *supra*.

infected the entire trial'' that appellant's resulting conviction does not comport with due process. *Lopez, supra* at 1193.

Reversed and remanded for new trial.

*Edmund K. U. Yee,* Deputy Public Defender *(Donna Woo,* Deputy Public Defender, on the brief), for defendant-appellant.

*Faye M. Koyanagi,* Deputy Prosecuting Attorney *(Cora K. Lum,* Deputy Prosecuting Attorney, on the brief), for plaintiff-appellee.

In the Matter of the Application of JOHN T. WEST, JR., for Admission to the Bar, Nunc Pro Tunc

NO. 7340

JUNE 8, 1979

RICHARDSON, C.J., OGATA, MENOR, JJ., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCIES

*Per Curiam*. Applicant, who presently serves as a district family judge in the family court of the first judicial circuit of this state, requests in this "Application for Admission to the Bar, Nunc Pro Tunc" that he be admitted to the Hawaii bar effective September 14, 1940, nunc pro tunc, without being required to take the regular written examination otherwise required of Hawaii bar applicants pursuant to Supreme Court Rule 15(f). Alternatively, counsel for Applicant has orally moved that this court declare that Applicant has been licensed to practice law in this jurisdiction since at least June 14, 1973, when Applicant was appointed a district family judge. Applicant has heretofore not been granted by this court a formal license to engage in the general practice of law.

Counsel for Applicant has explained that the sole purpose of the instant application is to ensure Applicant's eligibility for retention as a district family judge under the new judicial selection procedures mandated by the 1978 amendments to the Hawaii Constitution. Article VI, § 3 of the amended constitution provides in pertinent part that:

> Justices and judges shall be residents and citizens of the State and of the United States, and *licensed to practice law by the supreme court*. . . . A judge of the district court shall have been *so licensed for a period of not less than five years* preceding nomination.

(Emphasis added).

This court concludes, after careful consideration of the arguments advanced by Applicant, that a granting of the application for nunc pro tunc admission effective 1940 would defeat the purpose and intent of the law practice requirement embodied in Article VI, § 3. Similarly, a declaratory judgment by this court that Applicant has effectively been licensed to practice law since at least 1973 would also appear to subvert the intent of the constitution.

According to the application, Applicant graduated from an accredited law school in 1935, and has been duly admitted to the practice of law in the State of Arkansas and before the United States District Court for the District of Hawaii and the United States Supreme Court. Applicant has never been the subject of any investigation or proceeding for professional misconduct. Additionally, counsel for Applicant stated that Applicant has never taken the bar examination in Hawaii.

Applicant served honorably in the armed forces of the United States for over 26 years. He has been a legal resident of Hawaii since at least 1940. Upon Applicant's retirement from the military service in 1966, the senior judge of the family court of the first circuit appointed Applicant a family court referee. Family court referees were not required to be admitted to the practice of law. R.L.H. 1955, § 333-7 (Supp. 1965). On June 14, 1973, Applicant was appointed a district family judge pursuant to legislation permitting incumbent family court referees to be appointed as district family judges although not admitted to the bar. S.L.H. 1973, c. 219, § 5. Until the State constitution was amended in 1978, the constitution required only that supreme court justices and circuit court judges be admitted to the bar. But Article VI, § Sec. 3 of the amended constitution, as quoted *supra,* now broadly requires that "[j]ustices and judges shall be . . . licensed to practice law by the supreme court", with district court judges being required to be "so licensed for a period of not less than five years preceding nomination."

In seeking to meet the above constitutional qualifications, Applicant first requests that he be admitted to the bar nunc pro tunc effective 1940, without being required to take a written examination, based on a former provision of Supreme

*Dennis E. W. O'Connor* and *Mark P. Bleuenstein (Hoddick, Reinwald, O'Connor & Marrack* of counsel) for Applicant.