STATE OF HAWAII, Plaintiff-Appellee, *v.* LARRY N. ARAKAKI, Defendant-Appellant

NO. 11600

(D.C. NOS. 86-3313, 86-3312, 86-3314 AND 86-2283)

AUGUST 28, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This is an appeal by defendant Larry N. Arakaki (Defendant) of his convictions for operating a motor vehicle not insured under a no-fault policy (insurance violation) contrary to the provisions of Hawaii Revised Statutes (HRS) § 294-8(a) (1) (1985),[1] and for driving under the influence of intoxicating liquor (DUI) in violation of

---

[1] Hawaii Revised Statutes (HRS) § 294-8(a)(1) provides in part:

No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

HRS § 294-8(b) states that a violator of subsection (a) "shall be subject to the provisions of subsection 294-39(a) [,]" which is the general penalty provision.

HRS § 291-4(a)(2) (1985).[2] Defendant contends that (1) the State failed to prove the insurance violation beyond a reasonable doubt and (2) since there was inadequate foundation for the admission of the intoxilyzer test result into evidence, this court should reverse the DUI conviction and direct the entry of a judgment of acquittal upon remand. We affirm the insurance violation conviction, vacate the judgment of conviction for DUI, and remand for retrial.

## I. FACTS

After stopping Defendant for an alleged traffic violation, police officer Jason Dela Cruz (Dela Cruz) arrested Defendant for DUI. Dela Cruz then asked Defendant for his driver's license, no-fault insurance card, and vehicle registration. Defendant produced his driver's license, but could not locate the other two items. Believing the inability to locate the insurance card and registration was due to Defendant's intoxicated condition, Dela Cruz told Defendant he would help Defendant look "for his insurance card and registration, if [it] was okay." Transcript at 35. Dela Cruz was able to find the vehicle registration, but not the insurance card. Thereupon, Dela Cruz arrested Defendant for the insurance violation.

At the police station, Defendant consented to a breath test. The intoxilyzer test result indicated 0.13 percent alcohol in Defendant's blood.

After a bench trial, the district court found him guilty of both the insurance violation and the DUI offense,[3] and Defendant appealed.

---

[2] HRS § 291-4(a)(2) reads:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:

\* \* \*

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[3] Defendant was also charged with and tried for the offenses of driving on the left of center of roadway in violation of HRS § 291C-46 (1985), and possession of a switchblade knife in violation of HRS § 134-52 (1985). However, the district court acquitted Defendant of those charges.

## II. INSURANCE VIOLATION

Regarding the insurance violation, Defendant and the State agree that to convict a person for a violation under HRS § 294-8(a), the State must prove that (1) the motor vehicle was being operated on a public highway, (2) the vehicle was not insured under a no-fault policy, and (3) the operator was either the owner or, if not the owner, had knowledge of or acted recklessly by not "ascertaining that there was a valid, current no-fault card in the vehicle[.]" *State v. Lesher,* 66 Haw. 534, 537, 669 P.2d 146, 148 (1983). Defendant concedes that there was proof that he was the owner[4] of the automobile involved which was being operated on a public highway. He asserts, however, that the State "failed to meet its burden of proving that the car was not covered by insurance at the time of the citation." We disagree.

We hold that from the proven fact that Defendant failed to exhibit a no-fault insurance identification card upon demand of police officer Dela Cruz and that such card could not be found in Defendant's automobile, the trier of fact was permitted to draw an inference of the elemental fact that the automobile was uninsured.

"Inferences and presumptions are a staple of our adversary system of factfinding." *Ulster County Court v. Allen,* 442 U.S. 140, 156, 99 S. Ct. 2213, 2224, 60 L. Ed. 2d 777, 791 (1979). Where proof of elements of a crime cannot be shown or is difficult to show by direct evidence, "legislatures often provide for the inference of such elements of a crime based upon the existence of other proven facts." *State v. Brighter,* 61 Haw. 99, 103, 595 P.2d 1072, 1075 (1979).[5] Such statutory inferences, however, must pass constitu-

---

[4] At the outset of the trial, it was stipulated that Defendant was the "registered owner" of the vehicle in question. Transcript at 9.

[5] In *State v. Brighter,* 61 Haw. 99, 595 P.2d 1072 (1979), the supreme court attempted to distinguish between the words "presumption" and "inference." Quoting from *People v. Leyva,* 38 N.Y.2d 160, 168-69 n.3, 341 N.E.2d 546, 551 n.3, 379 N.Y.S.2d 30, 37 n.3 (1975), the court indicated that "permissible inferences" are "based on specified underlying facts which must first be proven before the inference may be drawn," but the word "presumption" should be used only where rules of jurisprudence "operate simply to place the burden of proof," *e.g.* affirmative defense, or "describe basic value judgments of our system," *e.g.* defendants are "pre-

tional muster. *See State v. Bumanglag,* 63 Haw. 596, 634 P.2d 80 (1981); *State v. Pimentel,* 61 Haw. 308, 603 P.2d 141 (1979); *State v. Brighter, supra; State v. Dwyer,* 57 Haw. 526, 560 P.2d 110 (1977); *State v. Cuevas,* 53 Haw. 110, 488 P.2d 322 (1971). Since the prosecution has the burden of proving every element of the crime beyond a reasonable doubt, the inference must not have the "impermissible burden-shifting effect." *Bumanglag,* 63 Haw. at 618, 634 P.2d at 94. Also, an inference is authorized "only if there is a natural and rational evidentiary relation between the facts proven and ultimate fact which the statute authorizes to be found." *Dwyer,* 57 Haw. at 529, 560 P.2d at 112.

The Hawaii No-Fault Law, HRS Chapter 294 (1985 and Supp. 1986), purports "to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents." HRS § 294-1(a) (1985). It declares that the system "can only be truly effective, . . . if all drivers participate at least to the extent required by law." HRS § 294-1(b) (1985). It states that the law "treats uninsured drivers more severely than those who obtain the legally required no-fault insurance coverage[,]" because of "the specific legislative intent of encouraging participation by all drivers in the no-fault insurance system[.]" *Id.* Yet, the No-Fault Law contains no explicit statutory inference to aid in the enforcement of HRS § 294-8 which requires all vehicles (except federally owned vehicles) operated on public highways to be insured.

In 1978, five years after the enactment of the No-Fault Law, the legislature was concerned about the uninsured motorist popula-

---

sumed" innocent until proven guilty. *Brighter,* 61 Haw. at 103 n.7, 595 P.2d at 1075 n.7.

The United States Supreme Court, however, has distinguished between *mandatory* and *permissive* presumptions, stating that a permissive presumption "allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *Ulster County Court v. Allen,* 442 U.S. 140, 157, 99 S. Ct. 2213, 2224, 60 L. Ed. 2d 777, 792 (1979). *See also McCormick on Evidence* § 347 (E. Cleary 3d ed. 1984). Thus, permissive "presumptions," so defined, are the same as "inferences" referred to in *Brighter.*

As suggested in *Brighter,* however, we will use the term "inference," rather than "permissive presumption," in this opinion.

tion. In enacting Act 91, 1978 Haw. Sess. Laws 116, the legislature indicated its purpose was

> to place law enforcement officers and the courts of the State in an effective statutory position to enforce the compulsory insurance requirements of the Hawaii No-Fault Law in order to protect the public as intended under the law.

Sen. Stand. Comm. Rep. No. 584-78, in 1978 Senate Journal at 1012.

Act 91, *inter alia*, added new HRS § 294-8.5 to the No-Fault Law and amended HRS § 286-116. HRS § 294-8.5 requires every insurer to "issue to its insureds a no-fault insurance identification card" for each insured motor vehicle and provides that "[t]he identification card shall be in the insured motor vehicle at all times and shall be exhibited to a law enforcement officer upon demand."[6] HRS § 286-116 was amended to require every licensed driver to have "a valid no-fault insurance identification card applicable to the motor vehicle operated as required under section 294-8.5, when operating a motor vehicle" and to "display the same upon demand of a police officer."[7]

---

[6] HRS § 294-8.5 (1985) reads in its entirety as follows:

Verification of insurance. (a) Every insurer shall issue to its insureds a no-fault insurance identification card for each motor vehicle for which the basic no-fault coverage is written showing the name and make and the factory or serial number of the motor vehicle, policy number, names of the insured and the insurer, and the effective dates of coverage including the expiration date; provided, however, that insurers of five or more motor vehicles which are under the common registered ownership and used in the regular course of business shall not be required to indicate the name of make and the factory or serial number of each motor vehicle. The identification card shall be in the insured motor vehicle at all times and shall be exhibited to a law enforcement officer upon demand.

(b) The commissioner of motor vehicles insurance shall issue a certificate of self insurance periodically, as necessary, for use in each motor vehicle insured under section 294-8(a)(2).

[7] HRS § 286-116 (1985) reads in its entirety as follows:

License, insurance identification card, possession, exhibit. (a) Every licensee shall have a valid driver's license in the licensee's immediate possession at all times, and a valid no-fault insurance identification card applicable to the motor vehicle operated as required under section 294.8.5, when operating a motor vehicle, and shall display the same upon demand of a police officer. Every police officer or law enforcement officer when stopping a vehicle or inspecting a vehicle for any reason shall demand the driver or owner display the driver's or

The legislative history indicates that Act 91 was to provide "the necessary teeth to the no-fault enforcement provisions, and . . . [to] reduce the uninsured motorist population." Sen. Stand. Comm. Rep. No. 584-78, in 1978 Senate Journal at 1013. Therefore, based on the reading of HRS §§ 294-8, 294-8.5, and 286-116 *in pari materia* in light of their legislative history, we conclude that, since Act 91's enactment, the No-Fault Law implicitly includes a provision that the fact that the no-fault insurance identification card was not in the vehicle being operated and was not exhibited to a law enforcement officer upon demand is prima facie evidence that the vehicle was uninsured.

In our view, such prima facie evidence "constitutes a permissive inference, thus permitting — but not compelling — the inference of guilt." *Brighter*, 61 Haw. at 103, 595 P.2d at 1075. Also, because under HRS § 294-8.5 "the statutory indicia of . . . [no-fault] insur-

---

owner's driver's license and insurance identification card. No person charged with violating this section shall be convicted if the person produces in court, or proves from the proper official or other records that the person was the holder of a driver's license or a no-fault identification card and policy conforming to chapter 294 or a certificate of self insurance issued by the commissioner of motor vehicle insurance pursuant to section 294-8.5(b), theretofore issued to the person and valid at the time of the person's arrest.

(b) At any time a law enforcement officer finds a motor vehicle in operation by a driver not in possession of the no-fault insurance identification card required under section 294-8.5, the officer shall issue a citation with the earliest possible date for court appearance in every instance.

(c) In all instances in which a citation shall be issued under subsection (b), whenever the driver cited is not found to be the registered owner of the motor vehicle under operation, the citation shall also be issued to the driver as the owner's agent and to the registered owner of the motor vehicle. Whenever the registered owner of any motor vehicle permits any person to operate the registered owner's motor vehicle, the registered owner appoints, designates, and constitutes the driver the registered owner's agent for all purposes under this section and sections 294-8.5, and 805-13.

(d) The operation of any motor vehicle required to be licensed on a highway by a driver, whether or not licensed, who knows, or has reason to believe, that the motor vehicle is not insured in compliance with chapter 294, shall constitute a violation of this chapter.

(e) Any registered owner of any motor vehicle required to be licensed, who directly or indirectly permits the operation of such motor vehicle on any highway at any time the motor vehicle is not insured in compliance with chapter 294, shall be guilty of a violation of this chapter. The registered owner shall, in all cases, be presumed to know whether a motor vehicle is insured in compliance with chapter 294.

ance is a no-fault insurance card kept in the vehicle[,]" *State v. Lesher,* 66 Haw. at 537, 669 P.2d at 148, there is "a natural and rational evidentiary relation" between the proven fact of no insurance card in the vehicle and the ultimate fact of the vehicle being uninsured. *State v. Dwyer,* 57 Haw. at 529, 560 P.2d at 112. Thus, the implicit permissive inference is constitutionally valid.

Accordingly, we hold that with the aid of the permissible inference the elemental fact that Defendant's automobile was uninsured was established beyond a reasonable doubt. *See People v. Pender,* 100 Misc. 2d 846, 420 N.Y.S.2d 62 (1979).

### III. DUI

Regarding the DUI conviction, the State concedes that in light of the recent cases of *State v. Souza,* 6 Haw. App. ____, 732 P.2d 253 (1987), and *State v. Rolison,* 6 Haw. App. ____, 733 P.2d 326 (1987), insufficient foundation was laid for the admission of the intoxilyzer test result and the evidence was improperly admitted. A dispute remains, however, whether the case should be remanded for retrial.

### A. *HRS § 291-4(a)(1)*

The record discloses that Defendant was charged with violation of HRS § 291-4 and that he waived the reading of the charge. The evidence presented at trial indicated that the State was proceeding under both HRS §§ 291-4(a)(1)[8] and -4(a)(2).[9] [10] At the conclusion

---

[8] HRS § 291-4(a)(1) provides:

    (a) A person commits the offense of driving under the influence of intoxicating liquor if:
        (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor[.]

[9] *See* note 2, *supra.*

[10] HRS § 701-109(1) (1985) provides in part:

When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which the conduct is an element.

of the trial, the court declared, "So based upon the evidence, I do find that you were under the influence under 291-4(a)(2) and that you blew a .13." Transcript at 90. The court was silent regarding the HRS § 291-4(a)(1) charge.

The State requests that the case be remanded so that a determination can be made whether Defendant is guilty of violating HRS § 291-4(a)(1). Defendant contends that a remand for that purpose would place him twice in jeopardy for the same offense in violation of the federal Constitution.

Relying on *Green v. United States,* 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), Defendant claims that there was an "implied acquittal" of the HRS § 291-4(a)(1) charge. In *Green,* when the jury returned a guilty verdict on the lesser included offense of second degree murder and remained silent on the charged first degree murder offense, the Court found "an implicit acquittal" of the latter charge. This case, however, does not involve lesser included offenses.

The result in *Green,* however, did not rest only on the implicit acquittal basis. The Supreme Court stated:

> For here, the jury was dismissed without returning any express verdict on that [first degree murder] charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense.

*Id.* at 191, 78 S. Ct. at 225, 2 L. Ed. 2d at 206.

Likewise in this case, the trial judge, the trier of fact, had full opportunity to render his decision on the HRS § 291-4(a)(1) charge. The record discloses no extraordinary circumstances which prevented him from doing so. Thus, Defendant's jeopardy for that offense came to an end at the conclusion of the bench trial. He cannot be placed in jeopardy again for the same offense.

We hold that Defendant cannot be retried on the HRS § 291-4(a)(1) charge.

### B. *HRS § 291-4(a)(2)*

During oral argument, Defendant asserted for the first time that because the DUI conviction must be reversed for "insufficiency of the evidence," he cannot be retried on the HRS § 291-4(a)(2) charge.[11] We disagree.

Our analysis starts with *Burks v. United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). In *Burks,* the Supreme Court pronounced that since "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal." *Id.* at 18, 98 S. Ct. at 2150-51, 57 L. Ed. 2d at 14. However, the Court distinguished between reversal for "trial error" and reversal for "evidentiary insufficiency" and indicated that, if a conviction is reversed solely due to trial error, retrial is constitutionally permissible. *Id.* at 15, 98 S. Ct. at 2149, 57 L. Ed. 2d at 12. Otherwise, "[i]t would be high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Id.* (quoting *United States v. Tateo,* 377 U.S. 463, 466, 84 S. Ct. 1587, 1589, 12 L. Ed. 2d 448, 451 (1964)). *Greene v. Massey,* 437 U.S. 19, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978), applied the *Burks* standard to the states.

Within a year of the *Burks* decision, the Hawaii Supreme Court, *sua sponte,* applied the *Burks* rule in *State v. Bannister,* 60 Haw. 658, 594 P.2d 133 (1979), which involved a first degree theft conviction in a jury-waived trial. The *Bannister* court held that a store manager's testimony, based solely upon a third person's notation on an invoice not in evidence, was inadmissible hearsay without exceptions. The court concluded that "[s]ince the manager's testimony was the only evidence that would support the conviction and [was] a necessary element of the crime, the State failed to prove every element of the crime, beyond a reasonable doubt."[12] *Id.* at 660, 594

---

[11] In his reply brief, Defendant requested that "the case [be] remanded for a new trial on the charge of driving under the influence in violation of HRS 291-4(a)(2)."

[12] Unlike the supreme court in *State v. Bannister,* 60 Haw. 658, 594 P.2d 133 (1979), a federal appellate court has, in applying the *Burks* rule, considered

P.2d at 135. Applying the *Burks* rule, the court instructed the trial court on remand to enter a judgment of acquittal for the defendant.

In our view, Defendant's reliance on *Bannister* is misplaced. The circumstances in this case are distinguishable from those in *Bannister*. The hearsay evidence in *Bannister* was held to be inadmissible under well-settled principles of evidence law. *See id.* at 659-60, 594 P.2d at 134-35. Neither of the DUI cases which required strict compliance with Chapter 111 of Title 11 of the Hawaii Administrative Rules with reference to the testing of the accuracy of the intoxilyzer, *State v. Rolison,* 6 Haw. App. ____, 733 P.2d 326 (1987); *State v. Souza,* 6 Haw. App. ____, 732 P.2d 253 (1987), had been decided at the time of the trial of this case. Thus, unlike the disputed evidence in *Bannister,* the evidence at issue in this case was admitted, but not contrary to well-settled principles of evidence law. We therefore apply the rule that "evidentiary points that involve matters of first impression" in this state constitute "trial error and not any insufficiency of the evidence at trial." *State v. Van Isler,* 283 S.E.2d 836, 838 (W. Va. 1981). *See also People v. Shirley,* 31 Cal. 3d 18, 723 P.2d 1354, 181 Cal. Rptr. 243 (1982).

We agree with Professors LaFave and Israel that "[t]he prosecution in proving its case is entitled to rely upon the rulings of the court and proceed accordingly[.]" W. LaFave & J. Israel, *Criminal Procedure* § 24.4 at 917 (1985). Otherwise, the prosecution will tend "to 'overtry' its cases — to introduce redundant evidence of the defendant's guilt — in order to insure itself against the risk of not being able to retry the defendant should some of its evidence be held on appeal to be inadmissible." *United States v. Tranowski,* 702 F.2d 668, 671 (7th Cir. 1983).

Accordingly, we hold that the trial court's admission of the intoxilyzer test result into evidence was a trial error. The Double

---

"whether the record evidence, *including* the inadmissible evidence, discloses insufficient evidence of guilt to entitle the defendant . . . to a judgment of acquittal[.]" *United States v. Marshall,* 762 F.2d 419, 423 (5th Cir. 1985) (emphasis in original). *See also United States v. Tranowski,* 702 F.2d 668 (7th Cir. 1983); *United States v. Block,* 590 F.2d 535 (4th Cir. 1978); *State v. Gray,* 200 Conn. 523, 512 A.2d 217 (1986); *State v. Boone,* 40 Md. App. 41, 393 A.2d 1361 (1978); *State v. Wood,* 596 S.W.2d 394 (Mo. 1980).

Jeopardy Clause does not preclude the State from retrying Defendant whose DUI conviction is being set aside because of a trial error. *Burks,* 437 U.S. at 15, 98 S. Ct. at 2149, 57 L. Ed. 2d at 12.

## IV. CONCLUSION

Based on the foregoing reasons, we (1) affirm the insurance violation conviction under HRS § 294-8 and (2) vacate the DUI conviction under HRS § 291-4(a)(2) and remand the case for retrial.

*Carol Kunishima,* Deputy Public Defender *(Deborah L. Kim, Richard W. Pollack,* and *Susan Barr,* Deputy Public Defenders, on the briefs), for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney *(Candace Kay Andersen,* Deputy Prosecuting Attorney, on the brief), for plaintiff-appellee.