STATE OF HAWAII, Plaintiff-Appellee, *v.* GARY DAVID WETZEL, Defendant-Appellant

NO. 13339

(D.C. NO. T86-15154)

NOVEMBER 27, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In a bench trial, defendant Gary David Wetzel (Defendant) was convicted of the offense of driving under the influence of intoxicating liquor (DUI) under Hawaii Revised Statutes (HRS) § 291-4(a)(2) (1985).[1] On appeal, he seeks reversal of his conviction arguing that (1) the blood test result was improperly admitted into evidence because the State of Hawaii (State) failed to show strict compliance with § 11-111-5(e) of the State Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration (Rules), and (2) the State failed to present "substantial evidence" that Defendant had operated a vehicle with a blood alcohol concentration (BAC) of at least 0.10 percent because Defendant's blood samples were drawn one hour and thirteen minutes after he had been initially stopped for speeding.[2] We affirm.

I.

On November 25, 1986, at 1:17 a.m.,[3] Defendant was stopped by police officers for speeding. At 1:30 a.m., Defendant was ar-

---

[1] Hawaii Revised Statutes (HRS) § 291-4(a) (1985) provides as follows:

Driving under influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:
  (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of liquor; or
  (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] In his reply brief, defendant David Gary Wetzel (Defendant) claims that the presentation of the statement of the case in the answering brief is "one-sided" and violates Hawaii Rules of Appellate Procedure Rule 28(b)(3). Defendant therefore requests that sanctions be imposed. We caution the prosecuting attorney that contradictory, as well as supporting, evidence should be presented in setting forth the material facts. However, we will not impose any sanction in this case.

[3] The police officer testified that Defendant was stopped at "[a]pproximately 1:15, 1:20." May 25, 1988 Transcript at 79. In the briefs, both parties state that Defendant was stopped at 1:17 a.m. Therefore, we use 1:17 a.m. in this opinion.

rested for DUI and transported to the Honolulu police station, where he consented to take a blood test. He was administered a blood test at the Pawaa Annex of the City and County of Honolulu (City) Department of Health.

At trial, City medical technologist Betty Shouse (Shouse) testified that she drew blood samples from Defendant's arm at 2:30 a.m. Later that morning, she analyzed the blood samples for alcohol content.

Shouse used the "direct distillation method" to determine Defendant's BAC. She testified that the type of direct distillation method utilized was a modification of the Shupe-Dubowski method. The test result, showing a BAC of 0.18 percent, was admitted into evidence over Defendant's objection.

Defendant's sole witness was Dr. Ronald Kienitz (Dr. Kienitz), an osteopathic physician. The court qualified him as an expert with respect to "the reliability of the Shupe-Dubowski method and . . . the direct distillate [sic] method on [sic] blood alcohol analysis." July 21, 1988 Transcript at 68. In essence, Dr. Kienitz testified that the modified Shupe-Dubowski method used by Shouse was inaccurate and thus the results were highly suspect. Dr. Kienitz also testified on direct examination as follows:

> Q Now, assuming one had, and it's a reliable figure for the moment, .18 alcohol content in the blood an hour and thirteen minutes after the time of driving, does that give you — does that tell you how much alcohol was in the blood or in any organ or in any part of the body an hour and thirteen minutes earlier?
>
> A No, it doesn't. It could be zero. It could be higher. It could be lower. It could be anywhere.

*Id.* at 104.

The trial court found Defendant guilty of DUI under HRS § 291-4(a)(2),[4] and Defendant timely appealed.

---

[4] Defendant was also convicted of an offense of traveling at a speed of 45 miles per hour in a 35 miles per hour zone in violation of HRS § 291C-102(a) (1985); he did not appeal this conviction. The trial court acquitted Defendant of the DUI offense under HRS § 291-4(a)(1) (operating a vehicle while under the influence of intoxicating liquor).

## II.

In laying the requisite foundation for the admission of blood test results into evidence, the State must show strict compliance with those provisions of the Rules that have a direct bearing on the validity and accuracy of the test results. *State v. DeMille*, 7 Haw. App. ____, 763 P.2d 5 (1988). Regarding the analysis of blood samples for BAC, § 11-111-5(e) of the Rules provides:

(e) The analysis shall be performed according to the instructions of the author or manufacturer. Any modification of the instructions shall be approved by the director [of the State Department of Health]. The instruction shall be on file in the area the analysis is performed.

The Rules provide in § 11-111-5(h), in relevant part, as follows:

Currently approved methods of blood alcohol analysis are:
(1) Direct distillation method;
(2) Gas Chromatograph;
(3) Enzymatic Method;
(4) Diffusion Method (microdiffusion and oxidation).

Defendant contends that the method of blood alcohol analysis used has a direct bearing on the validity and accuracy of the test result. Therefore, he argues that the State must show that the modified Shupe-Dubowski method had been approved as required by § 11-111-5(e) of the Rules. The trial court found that "the analytical technique used has been approved and properly approved." August 25, 1988 Transcript at 49. We hold that the record supports the trial court's finding.

On redirect examination, Shouse testified as follows:

Q    And as far as you know that method [modified Shupe-Dubowski method] has been approved?

A    Yes, sir.

July 21, 1988 Transcript at 24-25. Shouse's knowledge was based on a letter from the State Department of Health shown to her by her superior. Moreover, Shouse testified that she has been using the modified Shupe-Dubowski method, a type of direct distillation method, since 1984. Under the Rules, which have been effective as of November 22, 1986, the direct distillation method is a currently approved method of blood alcohol analysis.

Consequently, the trial court's finding that the Department of Health approved the modified Shupe-Dubowski method was not clearly erroneous. Therefore, the court properly admitted the blood test result into evidence. Regarding Dr. Kienitz's evaluation of the modified Shupe-Dubowski method, his testimony went to the weight of the evidence. *See State v. Gates,* 7 Haw. App. ____, ____, 777 P.2d 717, 721 (1989) (testimony regarding the 2,100 to 1 partition ratio that the Intoxilyzer uses to calculate a defendant's BAC "goes to the weight the jury should accord the Intoxilyzer test result with respect to its accuracy"). The record indicates that the trial court did not find Dr. Kienitz's testimony persuasive.[5]

### III.

Defendant claims that the State failed to prove that his BAC was 0.10 percent or more *at the time he was operating his vehicle.* Shouse drew Defendant's blood at 2:30 a.m. Defendant argues that his BAC at 1:17 a.m., the time he was stopped by the police officers, could have been below 0.10 percent as Dr. Kienitz testified. Therefore, Defendant concludes that his test result merely establishes his BAC as of 2:30 a.m. We hold that by virtue of HRS § 291-5(a) (1985),[6] there was no failure of proof by the State regarding Defendant's BAC at the time he was stopped.

### A.

"[A] motorist's ability to drive safely is adversely affected by a blood-alcohol content of .10%, even though some individuals may

---

[5] The trial judge "discount[ed]" the testimony of Dr. Ronald Kienitz, stating that the doctor "has not actually performed the Shupe/Dubowski, he has not done any blood analysis, he has done no really hard research[.]" August 25, 1988 Transcript at 49-50.

[6] HRS § 291-5(a) (1985) provides as follows:

(a) In any criminal prosecution for a violation of section 291-4, ten-hundredths per cent or more by weight of alcohol in the defendant's blood within three hours after the time of the alleged violation as shown by chemical analysis or other approved analytical techniques of the defendant's blood or breath shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation.

exhibit few outwardly visible symptoms of intoxication at that level. Consequently, many states have legislated directly against driving with a blood-alcohol content of .10%[.]" *State v. Knoll,* 110 Idaho 678, 680-81, 718 P.2d 589, 591-92 (App. 1986) (citations omitted). The blood or breath of a motorist cannot be tested while he is driving. Thus, his BAC must necessarily be determined at a time subsequent to his being stopped and arrested for DUI. The issue then is how to extrapolate the test result, indicating a BAC of 0.10 percent or more, to the BAC of the motorist at the time he was stopped.

This issue is one of first impression in Hawaii. However, other jurisdictions have considered and resolved this issue with a wide spectrum of results. At one end of the spectrum, the Vermont Supreme Court has held that the prosecution must establish that the 0.10 percent level existed at the time of driving. Thus, in Vermont, the prosecution is required to present probative evidence to relate a defendant's blood alcohol reading back to the time of driving. *State v. Rollins,* 141 Vt. 105, 444 A.2d 884 (1982).

At the other end of the spectrum, the New Jersey Supreme Court has determined that "the statute prescribes an offense that is demonstrated solely by a reliable breathalyzer test administered within a reasonable period of time after the defendant is stopped for drunk driving, which test results in the proscribed blood-alcohol level." *State v. Tischio,* 107 N.J. 504, 522, 527 A.2d 388, 397 (1987), *appeal dismissed,* 484 U.S. 1038, 108 S. Ct. 768, 98 L. Ed. 2d 855 (1988). The court concluded that a prosecution of the offense "neither requires nor allows extrapolation evidence to demonstrate the defendant's blood-alcohol level while actually driving." *Id.* Thus, in New Jersey, the test results constitute conclusive evidence of the offense.

Other cases fall between the *Rollins* and *Tischio* ends of the spectrum. Ohio has held that the test results reflect a legislative determination that the breath test given within two hours of the alleged offense will accurately indicate the blood-alcohol level at the time of driving. *State v. Ulrich,* 17 Ohio App. 3d 182, 478 N.E.2d 812 (1984). In Virginia, a test result obtained within two hours of the alleged offense "is an evidentiary fact which creates a rebuttable presumption that the [result] accurately reflects the blood alcohol concentration at the time of driving." *Davis v. Com-*

*monwealth,* 8 Va. App. 291, 298, 381 S.E.2d 11, 15 (1989). Alaska views the test result "as the presumptive equivalent of the amount of alcohol in the person's blood . . . at the time that the offense was committed." *Doyle v. State,* 633 P.2d 306, 310 (Alaska App. 1981). In Oregon, the jury may permissibly infer from the test result that the defendant was under the influence when he was driving. *State v. Conway,* 75 Or. App. 430, 707 P.2d 618 (1985). In Washington, the test result constitutes "circumstantial evidence of the blood alcohol level at the time of driving." *State v. Keller,* 36 Wash. App. 110, 114, 672 P.2d 412, 414 (1983). Finally, in Georgia, the test result establishes a prima facie case of guilt. *Mosley v. State,* 185 Ga. App. 610, 365 S.E.2d 451 (1988).

In determining this issue of first impression, we proceed with an analysis of our statutory scheme embodied in HRS §§ 291-4(a) and 291-5(a).[7]

### B.

Prior to 1983, HRS § 291-4 prohibited driving "while under the influence of intoxicating liquor[.]" HRS § 291-5 provided for certain presumptions with respect to the BAC obtained by a blood or breath test given to the driver within three hours after the time of the alleged DUI violation. Specifically, it provided that (1) a BAC of 0.05 percent or less created a presumption that the driver was not under the influence; (2) a BAC in excess of 0.05 percent but less than 0.10 percent could be considered with other competent evidence to determine whether the driver was or was not under the influence, but would not give rise to any presumption; and (3) a BAC of 0.10 percent or more created a presumption that the driver was under the influence at the time of the alleged offense.

In 1983, the legislature amended HRS §§ 291-4 and 291-5. Act 117, 1983 Haw. Sess. Laws 208. As amended, HRS § 291-4(a) sets forth a single offense of driving under the influence of intoxicating liquor "with alternative methods of proof[.]" *State v. Grindles,* 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989). The offense can be proved by showing that either the defendant drove a vehicle "while under the influence of intoxicating liquor," HRS § 291-4(a)(l), or

---

[7] *See* notes 1 and 6, *supra,* for the complete text of HRS §§ 291-4(a) and 291-5(a).

that the defendant drove a vehicle "with 0.10 per cent or more, by weight of alcohol in [his] blood." HRS § 291-4(a)(2). At the same time, HRS § 291-5 was amended to include subsection (a) which provides that a blood-alcohol level of 0.10 percent or more "in the defendant's blood within three hours after the time of the alleged violation . . . *shall be competent evidence* that defendant was under the influence of intoxicating liquor *at the time of the alleged violation.*" HRS § 291-5(a) (emphasis added). The presumption created by a BAC reading of 0.05 percent or less, and the non-presumptive effect of a BAC in excess of 0.05 percent but less than 0.10 percent, under the old HRS § 291-5, were retained in HRS § 291-5(b)(1) and -5(b)(2).

By Act 117, the legislature permitted proof of DUI by merely showing that a defendant drove a vehicle with a BAC of 0.10 percent or more.[8] HRS § 291-4(a)(2). To facilitate proving the BAC at the time of the alleged offense, the legislature provided in HRS § 291-5(a) that a defendant's BAC of 0.10 percent or more, taken within three hours after the time of the alleged DUI violation, *shall be competent evidence* that he was under the influence at the time of the alleged offense.

Accordingly, in the case at hand, the blood test result indicating a BAC of 0.18 percent at 2:30 a.m. was competent evidence that Defendant was under the influence of intoxicating liquor (that he had a BAC of 0.10 percent or more) at 1:17 a.m., the time that the police officers stopped Defendant. Thus, after the State proved that Defendant was the operator of the vehicle, at the time of the stop, and after the Intoxilyzer test result was admitted into evidence, HRS § 291-5(a) provided the extrapolation of the 2:30 a.m. test result to the 1:17 a.m. time of stop; therefore, additional evidence was not necessary to prove the elements of the DUI offense under HRS § 291-4(a)(2).

---

[8] Because a DUI offense may be proved by merely showing that a person drove a vehicle with a blood alcohol level of 0.10 percent or more, we stated that DUI is "a *per se* offense" under HRS § 291-4(a)(2). *State v. Christie*, 7 Haw. App. ____, ____, 764 P.2d 1245, 1246, *aff'd*, 70 Haw. 158, 766 P.2d 1198 (1988), *cert. denied*, ____ U.S. ____, 109 S. Ct. 2068, 104 L. Ed. 2d 633 (1989).

## C.

Contrary to our foregoing analysis, Defendant argues that HRS § 291-5 applies only to DUI offenses prosecuted under HRS § 291-4(a)(l). He argues that the State is required to prove all elements of the offense under HRS § 291-4(a)(2), specifically, the BAC at the time of driving. At oral argument, Defendant further contended that since the State has the burden of proving all elements of the DUI offense, our construction of HRS §§ 291-4(a)(2) and 291-5(a) unconstitutionally shifts to the defendant the burden of proving that his BAC, at the time he was driving, was less than 0.10 percent. We disagree.

The legislative history of Act 117 evinces a concern regarding this matter. The joint Senate Transportation and Judiciary Committees stated in their report:

Concern was expressed by your Committees that the portion of the bill . . . pertaining to 0.10% or more of blood/alcohol content, may create an impermissible conclusive presumption of guilt. The Honolulu Prosecutor has submitted a written opinion which states that this measure is constitutionally acceptable.

Sen. Stand. Comm. Rep. No. 999, in 1983 Senate Journal, at 1478.

Thus, although the old HRS § 291-5 used the words "shall be presumed" with respect to the effect of 0.10 percent BAC, HRS § 291-5(a) provides that 0.10 percent BAC "shall be competent evidence." "Competent evidence" creates neither a conclusive presumption nor a rebuttable presumption.

HRS § 291-5(a) provides that a BAC of 0.10 percent or more, within three hours after an alleged DUI offense, shall be competent evidence that the person was driving under the influence of intoxicating liquor at the time of the alleged offense. The legislature has created this statutory inference. The use of such an inference is not unconstitutional.

In *State v. Arakaki*, 7 Haw. App. ___, 744 P.2d 783 (1987), we stated:

Where proof of elements of a crime cannot be shown or is difficult to show by direct evidence, "legislatures often provide for the inference of such elements of a crime based upon the

existence of other proven facts." *State v. Brighter,* 61 Haw. 99, 103, 595 P.2d 1072, 1075 (1979).

*Arakaki,* 7 Haw. App. at \_\_\_, 744 P.2d at 785 (footnote omitted). We stated, however, that "the inference must not have [an] 'impermissible burden-shifting effect.' " *Id.* at \_\_\_, 744 P.2d at 786 (quoting *State v. Bumanglag,* 63 Haw. 596, 618, 634 P.2d 80, 94 (1981) ).

Here, at most, HRS § 291-5(a) provides for a permissible inference. Since the trier of fact is not required to infer that a BAC of 0.10 percent or more, taken within three hours of the stop, proves that the defendant was driving under the influence of intoxicating liquor at the time of the stop, the inference does not have an impermissible burden-shifting effect. It therefore passes constitutional muster.

### D.

The record shows that the trial court admitted into evidence the blood test result indicating that Defendant's BAC was 0.18 percent at 2:30 a.m. The court, pursuant to HRS § 291-5(a), considered the test result as competent evidence that Defendant was under the influence of intoxicating liquor at 1:17 a.m., the time that the police officers actually stopped Defendant. The court also admitted and weighed the testimony of Dr. Kienitz. The court, however, did not find the doctor's testimony persuasive, and found Defendant guilty under HRS § 291-4(a)(2).

Contrary to Defendant's contention, there was no deficiency in the prosecution's case.

Affirmed.

*Steven T. Barta (John Ashford Thompson,* with him on the briefs; Law Offices of Steven T. Barta, of counsel; Law Offices of John Ashford Thompson, of counsel) for defendant-appellant.

*Melinda Mendes,* Deputy Prosecuting Attorney, for plaintiff-appellee.